UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| CS BUSINESS SYSTEMS, INC., a foreign for-profit corporation, JAMES L. SHELTON AND VIRGINIA L. SHELTON, husband and wife, BRAD HECKENBERG AND LANA C. HECKENBERG, husband and wife, PJS RENTAL, LLC, a foreign limited liability company, WON Y. SHIN TRUST, WON Y. SHIN TRUSTEE, BART SUTHERIN AND KATHRYN SUTHERIN, husband and wife, ITZ GROUP, LLC, a foreign limited liability company, | NO. 6: 17-CV-00364-RBD-TBS  <br><br>MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION  <br><br>TRO AND INJUNCTIVE RELIEF SOUGHT |
| Plaintiffs, | |
| v. | CLASS ACTION |
| DWIGHT C. SCHAR, PAUL E. SIMONSON, DCS INVESTMENTS HOLDINGS GP, LLC, DCS REAL ESTATE INVESTMENTS, LLC, a Virginia and Florida Limited Liability Company, DCS REAL ESTATE INVESTMENTS, LLC, a Florida Limited Liability Company, DCS REAL ESTATE INVESTMENTS I, LLC, a Florida Limited Liability Company, DCS REAL ESTATE INVESTMENTS II, LLC, a Florida Limited Liability Company DCS REAL ESTATE INVESTMENTS III, LLC, a Florida Limited Liability Company DCS REAL ESTATE INVESTMENTS IV, LLC, a Florida Limited Liability Company DCS REAL ESTATE INVESTMENTS IV-A, LLC, a Florida Limited Liability Company DCS REAL ESTATE INVESTMENTS V, LLC, a Florida Limited Liability Company BELLA COLLINA PROPERTY OWNERS ASSOC., INC., DAVID BURMAN, AEGIS COMMUNITY MANAGEMENT SOLUTIONS, INC., a Florida for-profit corporation, RANDALL F. GREENE, KEITH CLARKE, PAUL LEBREUX, RICHARD C. ARRIGHI, JAMES D. RYAN, MICHAEL J. RYAN, THE RYAN LAW GROUP, LLC, CULLEN D'AMBROSIO, ROCKING RED H, LLC, RICKY L. SCHARICH, BELLA COLLINA TOWERS, LLC  <br>Defendants, | |

CS BUSINESS SYSTEMS, INC., a foreign for-profit corporation, at al.,
    Plaintiffs,
v.
DWIGHT C. SCHAR, et al.
    Defendants,
_____/

NO. 6: 17-CV-00364-RBD-TBS

MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

The Plaintiffs, pursuant to Rule 65(b) of the Fed.R.Civ.P. and Local Rule 4.05, move the Court for Entry of a Temporary Restraining Order and a subsequent Preliminary Injunction enjoining Defendants from acting in any capacity as agents or officers of the Bella Collina Property Owners Association, Inc. (hereinafter the "POA") and from taking any actions authorized by the illegal amendments to the POA's declarations of covenants, codes and restrictions filed after July 2, 2012, including construction of a hotel within and adjacent to the Bella Collina community.

The Plaintiffs base their motion on the following grounds:

1. Plaintiffs' First, Second, Third, Fourth, Fifth, Sixth, and Fourteenth Claims and Florida Common Law authorize injunctive relief to enjoin the actions causing irreparable harm described with great specificity in Plaintiffs' Complaint.

2. The Order of Judge Singletary of the Florida Fifth Circuit Court dated June 26, 2017 found that the Turnover Date for Bella Collina was August 29, 2005, that a Turnover Election compliant

with all laws and CC&Rs must be conducted within ninety (90) days and that the Plaintiffs were suffering irreparable harm by the denial of their right to govern their community.

3. As described in detail in Plaintiffs' Complaint at paragraphs 158 to 190, Defendants used their control of the POA to prevent the required election and to, instead, appoint directors over whom they have control.

4. These directors control the funds of the POA, initiate and maintain lawsuits against the Plaintiffs on behalf of the POA, file corporate documents on behalf of the POA, appoint officers of the POA, permit construction of a commercial hotel on Bella Collina property, hinder the Plaintiffs' access to their community, hold POA meetings without notice to POA members, adopt POA budgets, interfere with the sale or peaceful enjoyment of the Plaintiffs' property, and generally serve the interests of the Defendants.

5. The Defendants retain control of the POA to effectuate the illegal amendments filed by the Defendants, which purport to authorize all of the illegal and destructive acts described in the Complaint.

6. The Defendants have approved a multi-million dollar budget without the approval of the Plaintiffs and similarly situated lot owners.

7. The Defendants held an alleged board meeting on March 3, 2017 at 10 A.M. without the required notice to all POA members, for the purpose of choosing an auditor and approving various expenditures.

8. The choice of an independent auditor and a thorough, statutorily required audit is essential to a determination of the damages caused by the Conspiracy as described in the Complaint..

9. These and other critical decisions are being made by the self-interested Defendants, without the involvement of the lot owners.

10. All amendments to the CC&Rs filed by the Defendants after August 29, 2005 are invalid, because the Governing documents and the Florida Homeowners Act, as fully described in the Complaint at paragraphs 3-58, especially 35-37 and 44-48, require that amendments after the turnover date must be adopted by two thirds of the lot owners at a duly noticed meeting at which a quorum of lot owners are present and the amendments must not be unreasonable.

11. As set forth with great specificity in the complaint, it is undeniable that the conditions for valid adoption of these amendments were not met.

12. The Defendants recently began construction of the commercial hotel to be owned and operated by Defendant Bella Collina Towers, LLC, and further development will only cause greater harm to the community.

13. Some of the above-captioned Plaintiffs filed "Defendants' Petition to Remove Developer Appointed Directors and Resolve Turnover Election Issues or Defer Jurisdiction to DBPR" in related state court cases, which will be heard on March 23, 2017.

14. The Plaintiffs seek maintenance of the status quo until this Court can hear Plaintiffs' motion for Preliminary Injunction or receive relief from the state court.

15. Defendants Dwight C. Schar, Richard Arrighi, Paul Simon, and the DCS entities have retained the services of counsel who can protect their rights in this matter.

16. There is substantial likelihood that Plaintiffs will establish at trial that the Defendants are controlling the POA in defiance of court order, statutory law and the governing documents of the community.

17. The State Court found that irreparable harm was occuring, however proof of the violation of law or CC&Rs constitutes *per se* irreparable harm under Florida law.

18. Any harm to the Defendants would be outweighed by the harm to the Plaintiffs.

19. Granting this Motion for Temporary Restraining Order will serve the public interest in creating and protecting self-governing homeowner associations.

20. The Plaintiffs request that they not be required to post bond during the pendency of the issuance of the Restraining Order, since it is not believed that the Defendants could suffer harm by the issuance of the Temporary Restraining Order.

WHEREFORE, the Plaintiff respectfully request the issuance of a Temporary Restraining Order prohibiting the Defendants from acting in any capacity as agents or officers of the POA and from taking any actions authorized by the CC&R amendments filed by the Defendants after July 2, 2012.

Respectfully submitted,

__/s/ E. Timothy McCullough_____

E. TIMOTHY McCULLOUGH, Esq.
Trial Counsel for Plaintiffs
Florida Bar Number: 0033624
7463 Conroy Windermere Rd., Suite A
Orlando, FL 32835
Telephone: (407)601-6941
Fax: (407) 601-5982
mmlawecf@gmail.com
timlaw81@aol.com

**BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**

Lake County property records indicate that, on or before August 29, 2005, Ginn-LA sold and gave fee simple title to at least 721 developed lots to buyers, who, in accordance with the POA's Articles of Incorporation, became members of the Bella Collina Property Owners Association (many more have been sold since). On August 29, 2005, there are a total of 801 authorized and platted lots recorded in Lake County for the subdivision; and since 721/810=90.01%, the developer thus sells more than 90% of the total developed lots as of that date. Appendix 11. Therefore, August 29, 2005 is the Turnover Date, Appendix 11, as defined by Bella Collina's governing documents and §720.307, Florida Statutes. which states as follows, in pertinent part:

> 720.307 Transition of association control in a community.—With respect to homeowners' associations:
>
> "(1) **Members other than the developer are entitled to elect at least a majority of the members of the board of directors of the homeowners' association when the earlier of the following events occurs:**
>
> **(a) Three months after 90 percent of the parcels in all phases of the community that will ultimately be operated by the homeowners' association have been conveyed to members**"; (emphasis added)…
>
> "For purposes of this section, the term "members other than the developer" shall not include builders, contractors, or others who purchase a parcel for the purpose of constructing improvements thereon for resale." (Appendix 32.)

The statutes and Governing Documents are clear that two of the three directors must be elected by parcel owners within 90 days of the sale of 90% of the lots, and within this 90 day period, the developer, at its expense, must conduct a statutorily prescribed audit and perform statutorily prescribed duties, §720.307, Florida Statutes, all of which duties the developer defiantly refused to perform.

In light of this mathematically ineluctable evidence, Judge Singletary of the Lake County Florida Circuit Court issued an Order dated June 24, 2016, ruling, in pertinent part, that: the Turnover Date for the community is August 29, 2005; CSBS and the Sheltons are suffering irreparable harm; there is no available legal remedy; the harm to the lot owner outweighs the harm to the POA; and DCS must turn over the community to the lot owners in accordance with all applicable laws and the governing documents within ninety (90) days.

The Defendants take the extraordinary action to prohibit the Plaintiffs and other similarly situated lot owners from voting and to otherwise interfere with the Turnover as detailed in paragraphs 158 to 195 of the Complaint. They propose to permit builders and those under the control of the Defendants to vote in defiance of §720.307, Florida Statutes. Ultimately, they defy statutory law, the Governing Documents and the June 24, 2016 Order by failing to conduct an election, and instead hold an "informational" meeting on September 22, 2016, at which the *de facto* appointments of two builders previously appointed by the Defendants are ratified. The meeting lacks attendance by thirty percent of the lot owners entitled to vote. The quorum requirement is excused by the acquisition of proxies, which are prohibited by the governing documents at meetings to elect directors.

These actions effectively deny the Plaintiffs and other similarly situated lot owners from the relief granted by the June 24, 2016 Order and of legal rights identified in this motion. For the last five months, the Defendants have operated the POA without any authority for the purpose of carrying out the goals of the Conspiracy as described in paragraphs 64 through 89 of the Complaint, including the enforcement of illegal amendments described in paragraphs 90 through 122 and causing the irreparable harm described in paragraphs 123 to 157.

Plaintiffs' First, Second, Third, Fourth, Fifth, Sixth, and Fourteenth Claims and Florida Common Law authorize injunctive relief to enjoin the actions described with great specificity in Plaintiffs' Complaint.

Local Rule 4.05 requires that a Motion for Temporary Restraining Order must be supported by "allegations of specific facts shown in the verified complaint or accompanying affidavits, not only that the moving party is threatened with irreparable injury, but that such injury is so imminent that notice and a hearing on the application for preliminary injunction is impractical if not impossible (Rule 65(b), Fed. R. Civ. P." The Complaint and the motion allege with compelling support that the Defendants are making significant decisions with long term ramifications, including the commencement of the construction of a hotel and interference with the property rights of lot owners, including the ability to market and sell their property. The mere assertion of control over this non-profit corporation without elected officials is itself an intolerable injustice.

A temporary injunction lies when five requirements are satisfied: (1) the substantial likelihood of success on the merits, (2) the likelihood of irreparable harm, (3) the unavailability of an adequate remedy at law, (4) the threatened injury outweighs the possible harm, and (5) and the issuance of the temporary injunction will not disserve the public interest. *See Kuoni Destination Mgmt.*, 81 So. 3d at 532. *See also Airport Executive Towers v. CIG Realty, Inc.*, 716 So. 2d 311, 313 (Fla. 3d DCA 1998). The party seeking an injunction must satisfy each element with competent, substantial evidence. *See Concerned Citizens for Judicial Fairness, Inc. v. Yacucci*, 162 So. 3d 68, 72 (Fla. 4th DCA 2014). Colonial Bank, N.A. v. Taylor Morrison Serv. Inc., 10 So. 3d 653, 655 (Fla. 5th DCA 2009) held that a temporary injunction may be entered if the petitioner establishes: 1) the likelihood of irreparable harm, 2) the unavailability of an adequate remedy at

law, 3) substantial likelihood of success, 4) consideration of the public interest. The first element may be satisfied by a showing that a legal right is being violated. Id.

All elements for the issuance of a temporary restraining order are present. A prior state court ruling on the same issues in a related case issued an injunction, finding that all elements were proved. Since then, that Order has been defied and the irreparable harm continues as described in this Motion and the Complaint.

The Plaintiffs have been deprived of governance of their community. They had illegal CC&Rs filed by an unauthorized shadow board, whose allegiance is solely to the developer

The violation of a legal right establishes the first element. The inability to value the loss of voting rights and autonomy over one's property establishes the second element. The turnover violation and the illegal CC&Rs and satisfy the third element. The Public interest is expressed in the legislative intent of the statutes that have been violated, satisfying the third element.

A temporary restraining order will maintain the status quo until the parties can present evidence to this Court or the state court in a related case to permit the issuance of a preliminary injunction.

Accordingly, the Plaintiffs respectfully request issuance of a Temporary Restraining Order prohibiting the Defendants from acting in any capacity as agents or officers of the POA and from taking any actions authorized by the CC&R amendments filed by the Defendants after July 2, 2012. The subsequently request issuance of a preliminary injunction.

Respectfully submitted,

/s/ E. Timothy McCullough

E. TIMOTHY McCULLOUGH, Esq.
Trial Counsel for Plaintiffs
Florida Bar Number: 0033624
7463 Conroy Windermere Rd., Suite A
Orlando, FL 32835
Telephone: (407)601-6941
Fax: (407) 601-5982
mmlawecf@gmail.com
timlaw81@aol.com

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CS BUSINESS SYSTEMS, INC., a foreign for-profit corporation, at al.,
    Plaintiffs,
v.
DWIGHT C. SCHAR, et al.
    Defendants,

_____/

NO. 6: 17-CV-00364-RBD-TBS

COMPLAINT FOR
CIVIL ACTION

## ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER

**THIS CAUSE** having come before the Court on Plaintiffs' Motion Temporary Restraining Order, the Court finds that the moving party is threatened with irreparable injury that is so imminent that notice and a hearing on the application for preliminary injunction is impractical if not impossible (Rule 65(b), Fed. R. Civ. P."

Accordingly the Motion is granted. It is hereby Ordered that the Defendants are prohibited for fourteen (14) days from acting in any capacity as agents or officers of the POA. For the stated time period, The POA may not take any action to enforce the provisions of the CC&R amendments filed by the Defendants after July 2, 2012. The Defendants shall cease all construction activities related to a hotel known currently as the Bella Collina Towers for fourteen days. This Court shall order a hearing on the Motion for Preliminary injunction prior to the expiration of the 14 day time period.

**DONE AND ORDERED** in Chambers in Orlando, Orange County, Florida, this _____ day of March, 2017.

_____
District Court Judge

Copies to:

E. Timothy McCullough, Esq.
McCullough and Mitchell, PA,
7463 Conroy Windermere Rd., Suite A,
Orlando, FL, 32835
*Timlaw81@aol.com*