UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CS BUSINESS STSTEMS, INC., *et al.*,

      Plaintiffs,

v.                            CASE NO.: 5:17-cv-86-OC-40-PRL

DWIGHT C. SCHAR, *et. al.*,

      Defendants.

_____/

## POA DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Defendants, Bella Collina Property Owners Assoc., Inc. ("POA"), David Burman, Aegis Community Management Solutions, Inc. ("Aegis"), Randall F. Greene, Keith Clarke, and Paul Lebreux (collectively, "POA Defendants"), by and through undersigned counsel, file this Response in Opposition to Plaintiffs' Motion for Preliminary Injunction (Dkt. 167, "Plaintiffs' Motion").  The POA Defendants respectfully request the Court deny Plaintiffs' Motion because (1) the Court should abstain from exercising jurisdiction pursuant to *Younger v. Harris*, 401 U.S. 37 (1971); (2) the Complaint fails to state a cause of action for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and a substantial likelihood of success on the merits cannot be shown where no cause of action has been stated; (3) the motion fails to comply with the Local Rules; and (4) the motion should be denied on the merits.

## INTRODUCTION

This action was filed on March 2, 2017, by several property owners in Bella Collina, a planned residential community in Montverde, Florida.  The Complaint attempts to assert

a variety of claims for, among other things, alleged violations of RICO (Count I) and the analogous Florida RICO statute (Count II).

The Complaint is not a model of clarity.  Nevertheless, it is evident that Plaintiffs' claims are based on an alleged conspiracy between Defendants, or at least some Defendants, to control the POA to the detriment of the property owners.  Defendants allegedly failed to timely turn over the POA to the owners; unreasonably amended the POA's governing documents ("CC&Rs"), which are alleged to be invalid since August 29, 2005; and pursued hundreds of lawsuits to collect unpaid assessments based on the allegedly invalid CC&Rs.  The Complaint contains sections describing the state court proceedings and numerous "representative conspiracy actions."

The individual POA Defendants are four former and current members of the POA's board of directors.  Aegis is the community association manager for Bella Collina.  All of the Defendants have moved to dismiss the Complaint.  The POA Defendants now file this response in opposition to Plaintiffs' Motion and request that the Court deny the motion.

## DISCUSSION

I.   **The Court should abstain from exercising jurisdiction pursuant to *Younger v. Harris*, 401 U.S. 37 (1971)**

Plaintiffs' claims in this case are based on the incorrect premise that amendments to the CC&Rs are somehow illegal, the POA's actions are illegal and invalid because the POA was not properly turned over to the owners, and that it is somehow illegal for the POA to collect past due assessments and/or Bella Collina Club dues.  These issues have been litigated in state court and, as discussed in Dkt. 35, 48, 127, 141, and 148, are the subject of prior state court orders.

On December 20, 2017, Florida Fifth Judicial Circuit Judge G. Richard Singeltary entered additional orders in the related state court cases against both of the moving Plaintiffs, CS Business Systems, Inc. ("CSBS"), and James L. Shelton (collectively, the "Moving Plaintiffs").  Judge Singeltary granted the POA summary judgment on claims related to the collection of delinquent Bella Collina Club dues and found that James and Virginia Shelton owe $81,979.14 plus attorney's fees and costs, and CSBS owes $390,341.04 plus attorney's fees and costs.  Exhibits A, B.  Judge Singeltary also found that: (1) the CC&Rs "clearly and unambiguously set out the nature and scope of [CSBS's and the Sheltons'] duty to pay Assessments for Delinquent Club Charges;" Exhibit A, ¶ 5; Exhibit B, ¶ 5; (2) "the Association has the right and obligation to collect delinquent club Charges;" Exhibit A, ¶ 6; Exhibit B, ¶ 6; (3) amendments to the CC&Rs were recorded before the date of the recording of the deeds of the Sheltons and CSBS and the Sheltons and CSBS "had actual and/or constructive notice of the contractual provision[s]" of the CC&Rs; Exhibit A, ¶ 8; Exhibit B, ¶ 8; and (4) the Sheltons and CSBS failed to establish fraud or illegality of the CC&Rs.  Exhibit A, ¶¶ 12, 14; Exhibit B, ¶¶ 12, 14.

The Moving Plaintiffs have ongoing state court cases before Judge Singeltary that have been pending for five years.  As Mr. Shelton recently testified, (1) "issues relating to the club assessments, the POA assessments and the amendments to the CC&Rs have been the subject of state court litigation;" James Shelton Deposition, 55:23 – 56:2, attached as Exhibit C; (2) Judge Singeltary denied Plaintiffs' request for a receiver and held that all board actions of the POA from 2005 to 2016 were valid; *id.* at 55:23 – 57:2; and (3) Mr. Shelton is "trying to relitigate those issues in this case" and is "essentially appealing [Judge Singeltary] to the Fifth DCA and to the Middle District of Florida"

because "we think [Judge Singeltary is] wrong." *Id.* at 57:3-8.  Judge Singeltary's orders,

including the orders entered on December 20, 2017, involve important state interests,

Plaintiffs' requested injunctive relief would interfere with proceedings before Judge

Singeltary, and it is improper for Plaintiffs to attempt to relitigate and appeal Judge

Singeltary's orders in this Court.

The *Younger* abstention doctrine enjoins federal courts from interfering with

pending state proceedings "when the moving party has an adequate remedy at law and

will not suffer irreparable injury if denied equitable relief." *Younger v. Harris*, 401 U.S. 37,

43-44 (1971).  For the reasons discussed *supra* and in Dkt. 35, 48, 127, 141, and 148,

the Court should abstain from exercising jurisdiction over Plaintiffs' claims pursuant to

*Younger v. Harris*, 401 U.S. 37 (1971).[1]

## II.    The Court should dismiss Plaintiffs' RICO claims and deny Plaintiffs' Motion because the Complaint fails to state a claim for relief and Plaintiffs cannot show a substantial likelihood of success when they have not stated a claim

Plaintiffs' Motion is premised on the alleged RICO violations in Counts I and II of

the Complaint.  *See* Plaintiffs' Motion, p. 15.  For the reasons discussed in Dkt. 48, Counts

I and II fail to state a cause of action for RICO and should be dismissed.  The POA

Defendants incorporate by reference the arguments at Dkt. 48 and respectfully request

---

[1] *Younger* abstention was raised in the POA Defendants' Response to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 35), and in the POA Defendants' Motion to Dismiss the Complaint (Dkt. 48).  The POA Defendants raised *Younger* in their Response to Plaintiffs' Motion for Class Certification (Dkt. 127), because Plaintiffs represented for the first time that the predominant relief sought in this action was injunctive or declaratory.  The POA Defendants raised *Younger* in their Response to Plaintiffs' Motion for Leave to File Amended Motion for Class Certification (Dkt. 141), because Plaintiffs' argued for the first time that "none of the potential class members have pursued litigation against the Defendants based upon the fraud, RICO and conspiracy allegations presented by Plaintiffs."  Dkt. 138-1, PageID 3203.  The POA Defendants also raised *Younger* in response to Plaintiffs' Amended Motion for Class Certification on the basis that Plaintiffs are not adequate class representatives.  The POA Defendants incorporate by reference the arguments at Dkt. 35, 48, 127, 141, and 148 in support of *Younger* abstention.

the Court deny Plaintiffs' Motion.  The Moving Plaintiffs cannot show a substantial likelihood of success on the merits of their RICO claims when the Complaint fails to state a claim upon which relief can be granted.

### III.   Plaintiffs' Motion fails to comply with the Local Rules

Plaintiffs' Motion should be denied—like Plaintiffs' first two requests for injunctive relief—for failure to comply with the Local Rules.  *See* Dkt. 2, 42, 57.  Specifically, the Local Rules require that a motion for preliminary injunction "be supported by allegations of specific facts shown in the verified complaint or accompanying affidavits … that the moving party is threatened with irreparable injury.  Local Rule 4.05(b)(2), 4.06(b)(1). "Plaintiffs have not submitted a verified complaint," Dkt. 42, p. 4, and the affidavits submitted by Plaintiffs fail to include specific facts to support injunctive relief.[2]  *See* Dkt. 167-29, 169.

The Moving Plaintiffs have submitted the Affidavit of James L. Shelton and the Affidavit of Michael I Choo in support of their motion.  Both Mr. Shelton and Mr. Choo indicate that they have reviewed the Complaint, Motion for Preliminary Injunction, and the Memorandum attached to the Motion for Preliminary Injunction and that each "is true and correct to the best of my knowledge." Dkt. 167-29, ¶¶ 5-8; Dkt. 169, ¶¶ 6-9.  Nevertheless, neither Mr. Shelton nor Mr. Choo actually assert that they have actual personal knowledge as to the allegations or the arguments and representations in the Motion for Preliminary Injunction and Memorandum, nor can they.  Similarly, Mr. Shelton and Mr. Choo both claim to have "personal knowledge of the internet campaign referenced in the

---

[2] The Affidavit of Michael I Choo, Dkt. 169, also fails to comply with Local Rule 4.06(b)(2), because it was not served with Plaintiffs' Motion.  *See* Local Rule 4.06(b)(2) ("Service of all papers and affidavits upon which the moving party intends to rely must be served with the motion(Rule 6(c), Fed.R.Civ.P.).").

Memorandum" and both assert that the "representations in the Memorandum are true and correct to the best of my knowledge." Dkt. 167-29, ¶ 8, Dkt. 169, ¶ 9. These statements mean nothing—no specific facts are included in the affidavits, there is no indication of what constitutes the "internet campaign," and, as discussed *infra*, the arguments in Plaintiffs' Motion misrepresent the evidence and assume facts not supported by evidence. The remainder of Mr. Shelton's and Mr. Choo's affidavits fare no better. For example, Mr. Shelton and Mr. Choo both claim to "have been subjected to numerous intimidating actions by various Defendants" and that both "are in a constant fear of retaliation." Dkt. 167-29, ¶ 13; Dkt. 169, ¶ 13. These vague assertions are insufficient to establish any element of a RICO claim, let alone that irreparable injury will result absent an injunction. *See* Local Rule 4.05(b)(2).

In similar fashion, Plaintiffs' Motion fails to comply with Local Rule 4.05(b)(3)(ii), which requires a movant to "set forth facts on which the Court can make a reasoned determination as to the amount of security which must be posted pursuant to Rule 65(c), Fed.R.Civ.P." Local Rule 4.05(b)(3)(ii). Under Rule 65(c), "[t]he court may issue a preliminary injunction … only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

The Moving Plaintiffs seek to enjoin "all Defendants from continuing to engage in ongoing activity consistent with racketeering, including," among other things, "the exercise of authority of the offices of the Bella Collina Property Owner's Association for threats, intimidation, and retaliatory lawsuits." Plaintiffs' Motion, pp. 1-2. The Moving Plaintiffs also seek to enjoin Mr. Greene from, among other things, "any participation in

the governance of the Bella Collina Property Owner's Association."  *Id.* at pp. 24-25.

Plaintiffs believe that there are "about 400 lawsuits" at issue and that, somehow, even

Plaintiffs' prosecution of this lawsuit is an act of coercion by Defendants.  Complaint, ¶¶

412, 493 ("The POA, DCS and Ginn and its officers and directors instituted the present

action to coerce Plaintiffs into accepting the improper and illegal and practice [sic] of ….").

*See also* Dkt. 167, pp. 17-18.  The Moving Plaintiffs have not set forth facts on which the

Court can make a reasoned determination as to the amount of security which must be

posted pursuant to Rule 65(c) and as required by Local Rule 4.05(b)(3)(ii), and this is not

a case where it would be appropriate to waive the bond requirement.  The Moving

Plaintiffs seek to enjoin the POA's involvement in unspecified lawsuits.  Such an injunction

would cause the POA substantial harm.

Plaintiffs' first two requests for temporary or preliminary injunctive relief were

denied for failure to comply with the Local Rules.  The Moving Plaintiffs' third attempt

fares no better and, again, fails to comply with Local Rule 4.05.  The Court should

therefore deny Plaintiffs' Motion.  *See* Dkt. 2, 42; *Littlejohn v. CitiMortgage Inc.*, No. 3:15-

CV-194-J-34, 2015 WL 789131, at *1 (M.D. Fla. Feb. 24, 2015).

## IV.   Plaintiffs' Motion should be denied on the merits

### a.  Legal Standard

The party seeking entry of a preliminary injunction must establish:

> (1) a substantial likelihood of success on the merits; (2) that
> irreparable injury will be suffered unless the injunction issues;
> (3) the threatened injury to the movant outweighs whatever
> damage the proposed injunction may cause the opposing
> party; and (4) if issued, the injunction would not be adverse to
> the public interest.

*Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003) (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)).  "In this Circuit, '[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion' as to each of the four prerequisites."  *Siegel*, 234 F.3d at 1176 (quoting *McDonald's Corp v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)) (internal quotations omitted).  "The purpose of the preliminary injunction is to preserve the positions of the parties as best we can until a trial on the merits may be held."  *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

### b. The Moving Plaintiffs cannot show a substantial likelihood of success on the merits

Although the named plaintiffs are seeking to represent two classes of plaintiffs and argue that their claims are typical of the proposed classes, only two of the five named plaintiffs joined in Plaintiffs' Motion.  Moreover, despite this being the Moving Plaintiffs' third attempt at preliminary injunctive relief, it is still unclear exactly what relief is sought.

The Moving Plaintiffs initially state that they seek

> to enjoin all Defendants from continuing to engage in ongoing activity consistent with racketeering, including: (1) ongoing extortion and embezzlement through the continued use of threats and malicious character assassination, (2) fraudulent use of the mails for the purpose of harassing and intimidating Plaintiffs and Bella Collina lot owners, (3) the interference with Plaintiff's prosecution of this case through threats and intimidation, (4) the use of internet websites, telephonic services and mail services to attack Plaintiffs, Plaintiffs' counsel, their businesses, and their involvement in this lawsuit, and (5) the exercise of authority of the offices of the Bella Property Owner's Association for threats, intimidation, and retaliatory lawsuits.

> Plaintiffs' Motion also seeks to enjoin Defendant Randall Greene from: (1) any participation in the governance of the Bella Collina Property Owner's Association, (2) continuing acts of racketeering, including threats of violence and defamation against Plaintiffs and Plaintiffs' counsel, an officer of the Court, and (3) the use of internet websites, telephonic services and mail services to attack Plaintiffs, their businesses, and their involvement in this lawsuit.

Plaintiffs' Motion, pp. 1-2.  On the following page of the motion, the Moving Plaintiffs

state that they seek to enjoin "the following malicious actions:"

> 1. Preoccupy and degrade Plaintiffs' Counsel with derogatory internet postings on a website created explicitly for this purpose to viciously attack and malign Plaintiffs' counsel, E. Timothy McCullough … to destroy the attorney-client relationship and relationships with other potential law firms; and

> 2. Intimidate named Plaintiffs and [Plaintiffs' counsel] with frequent, anonymous mailings, phone calls and text messages that are intended to frighten them and to compromise the Plaintiffs' relationship with their attorney.

*Id.* at p. 3.  In their conclusion, the Moving Plaintiffs state that they

> seek to enjoin Defendant, Randall Greene, from:

> (1) any participation in the governance of the Bella Collina Property Owner's Association,

> (2) continuing acts of racketeering, including threats of violence and defamation against Plaintiffs and Plaintiffs' counsel, an offer of the Court,

> (3) continuing the use of any website that is utilized to disparage Plaintiffs and their counsel, including the Pissed Consumer site and the EIN site, and

> (4) the use of internet websites, telephonic services and mail services to attack Plaintiffs, their businesses, and their involvement in this lawsuit.

> Plaintiffs also seek to enjoin each Defendant from:

(1) continuing acts of racketeering, including threats of violence and defamation against Plaintiffs and Plaintiffs' counsel, an officer of the Court[,]

(2) Continuing the use of any website that is utilized to disparage Plaintiffs and their counsel, and

(3) Continuing the use of internet websites, telephonic services and mail services to attack Plaintiffs, their businesses, and their involvement in this lawsuit.

*Id.* at pp. 24-25.   Finally, in their proposed order, the Moving Plaintiffs propose the following order:

2.      Defendant, Randall Greene, is ENJOINED from any participation in the governance of the Bella Collina Property Owner's Association.

3.      Defendant, Randall Greene, is ENJOINED from maintaining or directing the posting of any defamatory and/or violent comments on any forum, including the internet, regarding any Plaintiff in this proceeding and any counsel for any Plaintiff in this proceeding.  The comments on the website in question that were made by Randall Greene or directed by Randall Greene shall be removed within twenty-four (24) hours of the rendering of this Order.

4.      Defendant, Randall Greene, is ENJOINED from using any mail service, and directing another to use any mail service, for the purpose of sending anonymous mailings to any Plaintiff in this proceeding for any reason.

5.      Any individual Defendant and all persons in active concert or participation with Defendant Randall Greene to propagate the activity described in Paragraph 3 & 4 of this Order is ENJOINED from further doing so.

Regardless of the exact relief sought, the Moving Plaintiffs have not satisfied their burden of persuasion.

Plaintiffs' Motion is premised on the alleged RICO violations in Counts I and II of the Complaint.  *See* Plaintiffs' Motion, p. 15.  RICO makes it "unlawful for any person

employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).[3] To succeed on their claim, the Moving Plaintiffs must prove "three essential elements: (1) a violation of section 1962; (2) injury to business or property; and (3) that the violation caused the injury." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991) (citing *O'Malley v. O'Neill*, 887 F. 2d 1557, 1561 (11th Cir. 1989)). To establish a violation of § 1962(c), the Moving Plaintiffs must prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985).  The Moving Plaintiffs have not demonstrated a likelihood of success on any of these elements.

> i.  **The Moving Plaintiffs have not identified the alleged enterprise, let alone provided sufficient evidence to establish the alleged enterprise**

An "enterprise" is defined under RICO to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  A "union or group of individuals associated in fact although not a legal entity" is "more challenging" to establish than "the simple case" where "the enterprise is an 'individual, partnership, corporation, association, or other legal entity.'" *Almanza v. United Airlines, Inc.*, Case No. 16-11048, 2017 U.S. App. LEXIS 4377, at *15 (11th Cir. Mar. 13, 2017) (quoting 18 U.S.C. §

---

[3] Plaintiffs' Motion does not cite to the RICO statute, 18 U.S.C. § 1962, nor does it specify which section of § 1962 is at issue.  The Moving Plaintiffs have also refused to identify in discovery which of the four sections of § 1962 are at issue.  *See* Plaintiff CS Business System, Inc.'s Response to Interrogatories, No. 12, attached as Exhibit D; Plaintiff James L Shelton's Response to Interrogatories, No. 12, attached as Exhibit E.  The Moving Plaintiffs cannot show a substantial likelihood of success on the merits where they cannot even identify what section of 18 U.S.C. § 1962 is at issue.

1961(4)).  Here, the Complaint relies on the more challenging "association-in-fact" form.  *See* Complaint, ¶ 410.

"[A]n association-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'"  *Boyle v. United States*, 556 U.S. 938, 946 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  "An association-in-fact enterprise must have a structure. … [with] three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Id.*

The Complaint alleges that "Defendants constitute an associated-in-fact Enterprise," Complaint, ¶ 410, and the Moving Defendants argue that they have gone "above and beyond in identifying the enterprise."  Plaintiffs' Motion, p. 21.  Despite this representation, most of the Defendants are not even mentioned in Plaintiffs' Motion, and it is entirely unclear who or what constitutes the alleged enterprise.  Mr. Shelton testified that "[t]he enterprise is the POA" and he was unaware that the Complaint alleges anything different; James Shelton Deposition, 56:6 – 57:12, 253:4-12; the Complaint alleges an association-in-fact enterprise; Complaint, ¶ 410; and the Moving Plaintiffs now argue that "the conspiracy utilized the POA board as an enterprise as well as operated as an association-in-fact enterprise."  Plaintiffs' Motion, p. 21.  Similarly, the Complaint and Plaintiffs' Motion do not adequately identify the alleged conspiracy or conspirators at issue;[4] *see* Complaint, ¶¶ 59-81; Plaintiffs' Motion, pp. 17-20; and Mr. Shelton cannot

---

[4] The Moving Plaintiffs also cite "A statement by Bill Boylan" as evidence in support of an alleged agreement to conspire.  Plaintiffs' Motion, p. 16; Dkt. 167-17.  This statement is not executed, it does not reflect its author, and it is not sufficient to support a motion for preliminary injunction.  *See* Local Rule 4.05(b)(2).

even identify whether there are one or more conspiracies at issue in this case.  *See* James Shelton Deposition, 251:23 – 252:3.

Accordingly, the Moving Plaintiffs have not established a likelihood of success on the merits of their RICO claims because they have not provided any evidence to support a finding that an enterprise exists, and they have failed to even identify who or what constitutes the alleged enterprise.

### ii.     The Moving Plaintiffs have not established, and they have not shown a substantial likelihood of establishing, the existence of a pattern of racketeering activity

"To successfully allege a pattern of racketeering activity, plaintiffs must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a <u>continuing</u> nature."   *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (emphasis in original).  "Racketeering activity" means the violation of any of the criminal statutes set forth in § 1961(1)(B), which include the statutes criminalizing mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343).  *See* 18 U.S.C. § 1961(1).  "The continuity element of a pattern of racketeering activity is crucial to a valid RICO claim in order to ensure that the crime alleged is the sort of offense that RICO is designed to address--one that is part of a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future."  *Jackson*, 372 F.3d at 1265.

The elements of each alleged predicate act must be plead with particularity under Rule 9(b) as against each Defendant, *see Ambrosia Coal & Constr. Co. v. Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007), and the Moving Plaintiffs must establish their claims as

to each Defendant.  That has not been done here, and the Moving Plaintiffs cannot show the existence of two or more predicate acts, let alone that multiple predicate acts were related and of a continuing nature.

The Moving Plaintiffs believe that hundreds of state court lawsuits were illegal because they

> were predicated upon false assessments created by the DCS-controlled POA board (which was possible because the POA was never turned over as required by Florida law), deflated lot values through the creation of false comparables, and immense pressure placed on the lot owner by DCS to settle the lawsuit that was filed against them by the POA, effectively extorting lots that would be conveyed to DCS and not the POA that was suing for them.

Plaintiffs' Motion, pp. 17-18.  The Moving Plaintiffs argue that they have shown the existence of a pattern of racketeering activity because they alleged such in the Complaint and because there exists the following

> substantive RICO violations in the instant case: decimated the lot values of Plaintiffs; greatly diminished the value of the community that Plaintiffs collectively spent millions to buy into; forced Brad and Lana Heckenberg to convey their lots to DCS while being intimidated into silence by virtue of a settlement agreement with exorbitant liquidated damages for merely speaking about the litigation; seek to deprive CSBS and the Sheltons of their lots; subjected Plaintiffs to derogatory internet postings and websites created solely for that purpose; including multiple threats of violence; mailed and physically stuffed, into their home mailboxes, intimidating unmarked letters addressed directly to the named Plaintiffs in this case; and have sent numerous text messages and made phone calls to the personal cell phone of the undersigned.

*Id.* at p. 22.  None of these arguments are supported by any evidence, and the Moving Plaintiffs have failed to identify or explain how any specific criminal statute was violated.

First, the Moving Plaintiffs have not provided any evidence of "false assessments," "false comparables," or using "immense pressure" to settle lawsuits.  The Moving Plaintiffs complain—without providing any competent evidence—that many Bella Collina owners settled state court lawsuits for the collection of assessments and that the settlements were somehow improper because the assessments were illegal.  Nevertheless, neither of the Moving Plaintiffs have settled a lawsuit with the POA.  Judge Singeltary's December 20, 2017 orders also confirm that the POA "has the right and obligation to collect delinquent club Charges," and that the collection of assessments from the Moving Plaintiffs was not improper.[5]  Exhibit A, ¶ 6; Exhibit B, ¶ 6.  It is also unclear how "immense pressure" to settle a lawsuit—if proven—could be construed as a criminal violation or predicate act under the RICO statute.  The Moving Plaintiffs have not identified the criminal statute alleged violated, and Florida does not even recognize an independent cause of action for economic duress.  *Rothis v. M & I Marshall & Isley Bank*, No. 8:10-cv-446-T-23EAJ, 2010 U.S. Dist. LEXIS 109074, at *16 (M.D. Fla. Sep. 29, 2010).

There is also no evidence that any of the Defendants had a negative impact on the value of property in Bella Collina.  To the contrary, Mr. Shelton testified that the great recession was a "catastrophe for Central Florida real estate," that property values in Bella Collina dropped by as much as 90 percent due to the great recession, and that values have increased since DCS took over.   James Shelton Deposition, 20:5-10, 30:6-16.  Plaintiffs cannot establish that any of the Defendants "decimated the lot values of

---

[5] To the extent the Moving Plaintiffs are attempting to seek preliminary injunctive relief on behalf of anyone other than themselves, the POA Defendants incorporate by reference the arguments at Dkt. 148 in response to Plaintiffs' Amended Motion for Class Certification.

Plaintiffs," nor have they even tried to explain how this conclusory argument would support a finding of a criminal violation or predicate act.

The Moving Plaintiffs argue that Brad and Lana Heckenberg were forced "to convey their lots to DCS while being intimidated into silence by virtue of a settlement agreement with exorbitant liquidated damages for merely speaking about the litigation." Plaintiffs' Motion, p. 22. Mr. and Mrs. Heckenberg are named plaintiffs in this case and Mr. Heckenberg is seeking appointment as a class representative. Nevertheless, neither Mr. Heckenberg nor Mrs. Heckenberg offered affidavits to support these statements and, in fact, neither even joined in filing Plaintiffs' Motion. Moreover, the Moving Plaintiffs have again failed to explain how negotiating a liquidated damages clause in a settlement is improper, constitutes a criminal violation, or is a predicate act under the RICO statute.

The Moving Plaintiffs argue that someone, presumably one or more Defendants, "seek[s] to deprive CSBS and the Sheltons of their lots." *Id.* Again, there is no evidence or even an explanation to support this statement. To the extent this argument is based on state court lawsuits "predicated upon false assessments," *id.* at p. 18, Mr. Shelton has admitted that "issues relating to the club assessments, the POA assessments and the amendments to the CC&Rs have been the subject of state court litigation." James Shelton Deposition, 55:23 – 56:2. This is the wrong forum to relitigate those issues, and, in any event, there is no evidence of illegal or improper assessments. As discussed *supra*, Judge Singeltary held that the POA's collection of assessments was proper and that the Moving Plaintiffs are liable for failure to pay assessments. *See* Exhibits A, B.

The Moving Plaintiffs next argue that they have been subjected to "derogatory internet postings and websites created solely for that purpose; including multiple threats

of violence." Plaintiffs' Motion, p. 22. The Moving Plaintiffs attached numerous exhibits to their motion in support of this argument, but none of the exhibits show—or even suggest—that any Defendant made a threat of violence or posted a derogatory or false comment on the internet.

Exhibit 9 to Plaintiffs' Motion provides a list of internet protocol ("IP") addresses for comments posted on pissedconsumer.com. According to Exhibit 9, a user identified as Randall Greene with IP address 174.227.5.137 posted one review. Dkt. 167-9, p. 6. There is no evidence, however, of what the review stated or that any other reviews or comments were made by Randall Greene or his associated IP address. *Id. See also* Dkt. 167-1, p. 1. The Moving Plaintiffs argue that "Defendant Randall Greene and the DCS Defendants coached and controlled the individuals who posted these comments and their lawyers crafted language to utilize in their posts," Plaintiffs' Motion, p. 8, but there is no evidence to support this argument.[6] Similarly, the Moving Plaintiffs cite to comments in Exhibits 2-7, 10, and 13 and argue that the comments are fraudulent and "posted under the direction of Defendant Greene." Plaintiffs' Motion, pp. 5-6, 8-9. The evidence does not support these arguments, the comments do not mention Randall Greene, and there is no evidence of who posted the comments. *See* Dkt. 167-2 – 167-7, 167-10, 167-13.

Exhibits 8, 11, 12, and 14 are identified as being posted by the owner and developer of Bella Collina and/or Randall Greene, but none of these posts contain threats of violence, derogatory statements, or false statements. Exhibits 8 and 14 are posts about the status of this lawsuit and an apology letter received by former plaintiffs, Bart and

---

[6] Any argument that the undersigned had anything to do with online posts related to Plaintiffs' counsel is absurd and is not—and cannot—be supported by evidence.

Kathryn Sutherin.  Dkt. 167-8, 167-14.  These posts are accurate summaries of the status of this litigation and under no circumstances could be construed as a threat to commit a crime of violence pursuant to 18 U.S.C. § 1959(a).  Similarly, Exhibits 11 and 12 merely thank owners of Bella Collina for their support.  Dkt. 167-11, 167-12.

Finally, the Moving Plaintiffs argue that they have received anonymous mailings, text messages, and phone calls regarding this case.  The Moving Plaintiffs have not offered any evidence to support a finding that any of these communications were sent by any of the Defendants.  For example, the Moving Plaintiffs represent that mail was placed in mailboxes of current Plaintiffs, Brad and Lana Heckenberg, and former Plaintiffs, Bart and Kathryn Sutherin, "by persons other than postal employees."  Plaintiffs' Motion, p. 11.  Nevertheless, the Moving Plaintiffs have not produced the documents at issue or provided affidavit evidence to support that mail was received, when it was received, the content of the mail, or who delivered the mail.

The Moving Plaintiffs argue that anonymous internet postings constitute threats of violence, but there is no evidence of an actual threat of violence, that any Defendant made a threat, or that any Defendant posted anything on the internet other than (1) an apology letter, (2) a factual summary of this case, or (3) notes of appreciation for support from Bella Collina property owners.

In short, the Moving Plaintiffs have not provided any evidence to show a substantial likelihood of establishing a predicate act, that multiple predicate acts were related to one another, or that criminal conduct is of a continuing nature.  The Moving Plaintiffs therefore cannot show a substantial likelihood of success on the merits of their RICO claims.

c.     **The Moving Plaintiffs have not established irreparable injury absent an injunction, that the threatened injury outweighs damage the proposed injunction may cause, or that the injunction would not be adverse to the public interest**

As discussed *supra*, the Moving Plaintiffs, as the parties seeking entry of a preliminary injunction, must establish "that irreparable injury will be suffered unless the injunction issues," "the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party," and "if issued, the injunction would not be adverse to the public interest." *Four Seasons Hotels & Resorts, B.V.*, 320 F.3d at 1210.  The Moving Plaintiffs have not carried their burden.

"A showing of irreparable injury is 'the sine qua non of injunctive relief.'" *Siegel*, 234 F.3d at 1176 (quoting *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)) (internal quotations omitted). "[T]he asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" *Id.* (quoting *City of Jacksonville*, 896 F.2d at 1285).

The Moving Plaintiffs claim irreparable harm due to the POA allegedly writing off bad debt.  Plaintiffs' Motion, p. 19.  The Moving Plaintiffs cannot establish irreparable injury because there is no evidence that the POA will write off debt in the future, and there is no threat of future, imminent injury when, according to the Moving Plaintiffs, the debt has already been written off.   There is also nothing illegal or improper about an association writing off bad debt.

The Moving Plaintiffs further argue that injury "is actual, imminent and ongoing (e.g. website posting that assassinate the character of [Plaintiffs' counsel] while simultaneously commenting on the merits of a case that has yet to move beyond the 'motion to dismiss phase'; anonymous mailings to intimidate continue to be received by

Plaintiffs)." Plaintiffs' Motion, p. 23 (emphasis omitted). As discussed *supra*, there is no evidence that any Defendant made a threat of violence, "assassinate[d] the character" of Plaintiffs' counsel, or made anonymous mailings, phone calls, or texts. Moreover, there is nothing improper about "commenting on the merits of [this] case." This case has no merit, and the Moving Plaintiffs have not—and cannot—demonstrate irreparable harm. The Moving Plaintiffs also cannot establish, and they have not offered any evidence to establish, that any threatened harm outweighs the harm to Defendants or that an injunction would not be adverse to the public interest.

## CONCLUSION

The Moving Plaintiffs, CSBS and Mr. Shelton, seek relief from this Court that is both extraordinary and drastic, and they have done so without a scintilla of evidence of wrongdoing by any of the Defendants. Notably, despite seeking appointment as class representatives, Mr. Shelton and Mr. Choo[7] could not even muster support from a majority of the named plaintiffs to join in their motion. This is telling, especially considering all of the named plaintiffs are represented by the same counsel.

For the reasons discussed *supra*, the POA Defendants respectfully request the Court deny Plaintiffs' Motion for Preliminary Injunction and abstain from exercising jurisdiction over this case pursuant to the *Younger* abstention doctrine. In the alternative, the POA Defendants respectfully request the Court deny Plaintiffs' Motion because the Moving Plaintiffs have not stated a cause of action for RICO, the motion fails to comply with the Local Rules, and the motion fails to establish any of the elements necessary for the Court to enter a preliminary injunction.

---

[7] Mr. Choo is not a named plaintiff and improperly seeks to be named a class representative on behalf of CSBS. *See* Dkt. 148.

Dated this 28th Day of December 2017.

s/ Jeffrey M. Partlow
_____
CHRISTINA BREDAHL GIERKE
Florida Bar No.:  55462
JEFFREY M. PARTLOW
Florida Bar No.:  110627
Emails:   christina.gierke@csklegal.com
              jeffrey.partlow@csklegal.com
              jeanna.bond@csklegal.com
COLE, SCOTT & KISSANE, P.A.
Tower Place, Suite 400
1900 Summit Tower Boulevard
Orlando, Florida 32810
Telephone (321) 972-0025
Facsimile (321) 972-0099
*Counsel for Defendants Bella Collina Property Owners Assoc., Inc., David Burman, Aegis Community Management Solutions, Inc., Randall F. Greene, Keith Clarke, and Paul Lebreux*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of December, 2017, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send an electronic notice to all authorized CM/ECF filers, including those listed below.

/s/ Jeffrey M. Partlow
_____
Jeffrey M. Partlow, Esq.

| | |
|---|---|
| E. Timothy McCullough, Esq.<br>7463 Conroy Windermere Road<br>Suite A<br>Orlando, FL 32835<br>Email: timlaw81@aol.com<br>mmlawecf@gmail.com<br>*Attorneys for Plaintiffs* | Michael J. Ryan, Esq.<br>Ryan Law Group, PLLC<br>636 U.S. Highway One, Suite 110<br>North Palm Beach, FL 34408<br>Email: mikeryan32645@yahoo.com<br>mrj@ryanlawgroup.net<br>sue@ryanlawgroup.net<br>*pro se* |
| James D. Ryan, Esq. | Michael D. Crosbie, Esq. |

| | |
|---|---|
| Ryan Law Group, PLLC<br>636 U.S. Highway One, Suite 110<br>North Palm Beach, FL 34408<br>Email: jdr@ryanlawgroup.net<br>*Attorneys for Defendants, Ryan Law Group, PLLC, Cullen D'Ambrosio and James D. Ryan* | Jennifer P. Sommerville, Esq.<br>Nicole Ballante, Esq.<br>Shutts & Bowen, LLP<br>300 South Orange Avenue, Suite 1000<br>Orlando, FL 32801<br>Email: mcrosbie@shutts.com<br>jsommerville@shutts.com<br>nballante@shutts.com<br>*Attorneys for DCS Defendants* |
| Michael D. Logan, Esq.<br>Richard A. Jarolem, Esq.<br>Traub Lieberman Straus & Shrewsberry, LLP<br>11770 US Highway One, Suite 402E<br>Palm Beach Gardens, FL 33408<br>Email: mlogan@traublieberman.com<br>rjarolem@traublieberman.com<br>PBGPleadings@traublieberman.com<br>*Attorneys for Aegis Community Management Solutions, Inc., and David Burman* | Jim Ippoliti, Esq.<br>Wilderman Malek, PL<br>1990 W. New Haven Avenue, Suite 201<br>Melbourne, FL 32904<br>Email: jim@uslegalteam.com<br>*Attorneys for Plaintiffs* |

1918.1965-00/8702907