UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CS BUSINESS SYSTEMS, INC., a foreign      NO. 5: 17-CV-86-OC-40-PRL
for-profit corporation, et al.,

         Plaintiffs,

v.

DWIGHT C. SCHAR, et al.             **PLAINTIFFS' RESPONSE TO**
                                       **DOC. 174**

         Defendants.
_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## RYAN DEFENDANTS' RULE 11 MOTION FOR SANCTIONS

Plaintiffs, by and through the undersigned, offer their response to the Ryan Defendants'

("Ryan Law Group, James D. Ryan, and Cullen D'Ambrosio") Motion for Rule 11 Sanctions

(Doc. 174), stating as follows:

## Introduction

Plaintiffs filed their *Complaint* (Doc. 1) on March 2, 2017 and their *Motion for Class

Certification* (Doc. 118) on August 4, 2017.  Subsequent to Widerman Malek's entry into this

case on behalf of Plaintiffs, an *Amended Motion for Class Certification* (Doc. 145) was filed on

October 23, 2017.

Conforming to the DCS Defendants' unethical litigation defense standards, the Ryan

Defendants now bring forth their deficient Motion for Rule 11 Sanctions to continue the ad

hominem attacks on Plaintiffs' counsel and prevent by design the substantive determination of

the Plaintiffs' rights in this case.

In initiating this proceeding, Plaintiffs seek from this Court a determination of whether real estate developers conspired with felons, lawyers and others illegally to assume the positions of fiduciaries in a non-profit property owner's association for the documented purpose of extorting the property of these lot owners, all of whom are in similarly situated positions.  Much of this exploitation occurred in the context of the greatest real estate recession in history, a time when the victims were especially vulnerable.

The initiation of this proceeding occurred after four years of extensive research and investigation, which uncovered significant evidence outlining the Defendants' execution of their scheme, including:

1. A chain of e-mails from Defendant Paul Simonson coordinating a meeting with Defendants Greene, J. Ryan, Arrighi (a convicted felon), and others at a boathouse owned by Defendant Schar to formulate the plot. (Doc. 176-16)

2. A signed memorandum from Defendant M. Ryan that outlined the conspiracy and goal ("DCS wants lots"), which included: (1) the for-profit Bella Collina Club funding the collection efforts by the non-profit POA on their behalf, (2) the systematic extortion of these lots from each lot owner in the community, (3) the write-off of encumbrances based upon a matrix created by Defendant Simonson, and (4) the conveyance of these lots either to DCS if unencumbered, or to Rocking Red H, LLC if encumbered to clear said encumbrances, and then conveyance to DCS, which, in summation, "The Club funds this effort and DCS wants lots." (Doc. 176-18)

3. An agreement to fund collection activities between the non-profit POA and the for-profit Bella Collina Club, in furtherance of conspiracy.  (Doc. 176-19)

4. Fee agreements between DCS and the Ryan Law Group, in furtherance of this conspiracy.  (Doc. 176-20)

5. The incorporation of numerous holding companies, including Rocking Red H, LLC and DCS I-V, in furtherance of this conspiracy. (Doc. 176-22 & 176-23)

6. The filing of hundreds of lawsuits by the POA on behalf of the Bella Collina Club against those who the POA owed a fiduciary duty to, in furtherance of this conspiracy. (Doc. 176-21)

7. The conveyance of hundreds of lots between holding companies, Defendant Rick Scharich, and DCS, in furtherance of this conspiracy. (Doc. 176-24, 25 & 26)

8. The write-offs of assessments owed to the POA, in furtherance of this conspiracy. (Doc. 176-27 and 176-28)

Since the filing of the *Complaint*, Plaintiffs have endured constant threats, harassment and unethical treatment, including:

1. Being falsely accused of witness tampering by the DCS and Ryan Defendants, and Defendant Greene, on this federal docket, who utilized the contrived deposition of a convicted felon based upon a confidential copy of the then-unfiled *Complaint* as a mechanism to commit fraud upon this Court and lead all who have read the deposition to believe that Plaintiffs' counsel, an expert witness, Plaintiff Shelton and Former Plaintiffs the Sutherins, somehow "witness tampered";

2. Being subjected to false, malicious, threatening, and defamatory internet posts, effectuated by Defendant Greene;

3. Being subjected to anonymous mailings meant solely to intimidate Plaintiffs into withdrawal;

4.  Being subjected to improper questioning and intimidation at scheduled depositions by

    DCS counsel; and

5.  Being subjected to interference with their legal representation.

Now, Plaintiffs vigorously defend this Motion for Rule 11 Sanctions filed by the Ryan

Law Group as yet another contrived obstacle to the just adjudication of their claims.

### Standard of Review

"Rule 11, Federal Rules of Civil Procedure, mandates a reasonable prefiling inquiry with

respect to the facts and the law on which a paper is based. Rule 11 specifies that papers must be

well-grounded in fact and warranted by existing law or by a good faith argument for the

extension, modification, or reversal of existing law. Rule 11 further specifies that papers may not

be interposed for any improper purpose, such as to harass or to cause unnecessary delay or

needless increase in the cost of litigation." *Pierce v. Commercial Warehouse,* 142 F.R.D. 687,

690, 1992 U.S. Dist. LEXIS 9227, *4, 24 Fed. R. Serv. 3d (Callaghan) 472, 1992-2 Trade Cas.

(CCH) P69,946, 6 Fla. L. Weekly Fed. D 258.  "The purpose of Rule 11 is to reduce frivolous

claims, defenses or motions and to deter costly meritless maneuvers, thus avoiding unnecessary

delay and expense in litigation." *Id.*

"A two-part test is used to analyze whether sanctions are warranted. 1) Are the party's

claims are objectively frivolous, and; 2) Should the person signing the pleadings have been

aware that the claims were frivolous." *Diaz v. First Marblehead Corp*., 643 Fed. App'x. 916,

921 (11th Cir. 2016); *Pierce v. Commercial Warehouse*, 142 F.R.D. 687 (M.D. Fla. 1992).

"A reasonableness test is used to evaluate objective frivolity, i.e. whether a reasonable

attorney in like circumstances could believe his or her actions were justified in law and fact at

the time of the offending conduct." *Adams v. Austal, U.S.A., L.L.C.*, 503Fed. App'x. 699, 703

(11th Cir. 2013); *Sussman* 150 F.R.D. at 213.

"The use of Rule 11 as an additional tactic of intimidation and harassment has become

part of the so-called "hardball" litigation techniques espoused by some firms and their

clients. Those practitioners are cautioned that they invite retribution from courts which are far

from enchanted with such abusive conduct.  A court may impose sanctions on its own initiative

when the Rule is invoked for an improper purpose. *[citation omitted]*."  *Gaiardo v. Ethyl Corp.,*

835 F.2d 479, 485, 1987 U.S. App. LEXIS 16270, *16, 108 Lab. Cas. (CCH) P55,851, 2 I.E.R.

Cas. (BNA) 1587, 95 A.L.R. Fed. 93, 9 Fed. R. Serv. 3d (Callaghan) 1378

"Cases which impose a continuing duty on counsel to make amendments based on

knowledge ascertained after filing are not consistent with the Rule. [*Oliveri v. Thompson*, 803

F.2d 1265, 1274 (2d Cir. 1986). *Accord Pantry Queen Foods, Inc. v. Lifschultz Fast Freight*,

Inc., 809 F.2d 451, 454 (7th Cir. 1987).]  *Gaiardo* at 485.

## Argument

### 1. *Plaintiffs' Claims Are Not Objectively Frivolous*

As stated in the *Diaz* holding, the test to determine whether Rule 11 Sanctions are proper

is whether the party's claims are objectively frivolous and if the person signing the pleadings

should have been aware that the claims were frivolous.

In the instant proceeding, Plaintiffs' claims are not objectively frivolous and thus the

attorney signing the pleading could not be aware that these claims are frivolous.

"Factually groundless allegations warrant Rule 11 sanctions." *Hillsborough County v. A & e Rd. Oiling Serv.,* 160 F.R.D. 655, 659, 1995 U.S. Dist. LEXIS 2983, \*14, 8 Fla. L. Weekly Fed. D 668.  In their *Complaint*, Plaintiffs set forth 91 pages of highly particularized facts, outlining the significant misdeeds of the Defendants.  Plaintiffs have further elaborated on these highly particularized facts in their response to all Motions to Dismiss (Doc. 64), their Amended Motion for Class Certification (Doc. 145), and most recently, their Motion for Preliminary Injunction (Doc. 176).

"Cases which impose a continuing duty on counsel to make amendments based on knowledge ascertained after filing are not consistent with the Rule." *Accord.*  As Plaintiffs have demonstrated throughout this proceeding, knowledge ascertained after filing has been made a part of this docket through subsequent pleadings and investigations for further evidence continue to be conducted.

The standard for determining whether a pleading is well grounded in fact for Rule 11 purposes is "objectively reasonable under the circumstances." *Hillsborough County v. A & E Road Oiling Service, Inc.*, 160 F.R.D. 655, 659 (M.D. Fla. 1995).  "A filing meets this requirement if there is some evidentiary basis for the position taken at the time the pleading is signed. Even if the factual assertions in a paper are later disproven or are insufficient to survive a summary judgment motion, the paper is not sanctionable."[1]  Plaintiffs' factual assertions in their Complaint and Amended Motion for Class Certification are objectively reasonable under the circumstances.  At the time of filing, the Michael J. Ryan letter was incorporated into the pleading.  This memorandum, drafted by a Defendant and conspirator, outlines the structure of

---

1 https://apps.americanbar.org/litigation/committees/trialpractice/articles/spring2012-young-lawyers-guide-rule11-sanctions.html

the conspiracy and the common goals. The evidentiary basis of just this memorandum is undeniable and evidence continues to mount.

Simply put, Plaintiffs' Counsel has gone above and beyond the duty of reasonable efforts to ensure that the signed pleadings are well grounded in fact.

### 2. *The Ryan Defendants Intend to Harass and Intimidate Plaintiffs and Their Counsel*

From the start of this proceeding, Plaintiffs have been made well aware of the scorched earth tactics that would be utilized by all Defendants in proceeding. Plaintiffs and their counsel have additionally been subjected to the mistreatment more particularly described above, all while this proceeding remains at an early phase. However, the use of these "hardball litigation techniques" can certainly yield results not sought.

Not of coincidence, the Ryan Defendants' Rule 11 motion was served at a time that Plaintiffs' co-counsel withdrew from the proceeding and two days before Christmas.

In the opening pages of their motion, the Ryan Defendants brazenly state "Any reasonable lawyer objectively reviewing the facts, based on readily available documentation, would conclude this case is a sham." (Doc. 174, p. 4). However, any reasonable lawyer objectively reviewing the Ryan Defendants' motion would conclude it is wrought with deficiencies.

Further, the Ryan Defendants also contend that this case is a sham, but wholly fail to identify another community whose developer usurped control of the POA board, refused to turn over the community to its members as required by law, created and passed illegal self-serving amendments contrary to the governing CC&R's, and then used those illegal amendments to

regain control and ownership of almost every lot in the community, all for their own benefit and to the dismay of the low owners.  There certainly is a sham, **but it is not effectuated by Plaintiffs**.

The Ryan Defendants' Rule 11 Motion broadly and inexplicably seeks dismissal of all counts ("Consequently, all counts of the Complaint should be dismissed because all counts are based on these debunked assertions" [Doc. 174, p. 13]), and seems to focus itself on the issue of res judicata ("Sanctions are appropriate because this action is nothing more than an impermissible appeal of state court losses" [Doc. 174, p. 3]) and a dissertation of the Bella Collina CC&R's.  The motion focuses almost entirely on the Complaint, with minimal inclusion of the Amended Class Certification Motion ("Plaintiffs' Amended Motion for Class Certification [Doc.145] is included here, alongside the Complaint, because it marks the first substantive, offensive paper filed by Mr. Ippoliti/Wilderman Malek and it tracks the Complaint." [Doc. 174, p.2]), as only roughly 3 of the 18 total pages of the motion reflect the Class Certification Motion.

In the "Wherefore" clause, the Ryan Defendants seek to have the Court determine that the Rule 11 was violated "through [the] frivolous filing of the Complaint and Amended Motion Class Certification (sic), and asks the Court to "impose appropriate sanctions on the plaintiffs and their counsel…including requiring them to pay the reasonable attorney fees and costs the RYAN defendants have incurred, and continue to incur, as a result of their Rule 11(b) violations."

In a recent holding in the Middle District, the Court reviewed a motion strikingly similar to that of the Ryan Defendants.  In the holding, Judge Mendoza stated, "Furthermore, the motion is wrought with other deficiencies. The motion is self-contradictory in that it speaks to the

purported frivolity of the entire action; at the same time, the motion only attacks Counts One and Four. True to form, the motion's request for relief pursues "all costs and fees . . . incurred in the defense of this action," thereby failing to distinguish the fees and costs incurred with regard to Counts One and Four. Similarly, defense counsel's corresponding Declaration shares this error. Lastly, the motion generally discusses the purported frivolity of the FCCPA claims but, without explanation, only challenges one of them—Count Four." *Claudet v. First Fed. Credit Control, Inc.*, 2015 U.S. Dist. LEXIS 165076, *9, 25 Fla. L. Weekly Fed. D 259, 2015 WL 7984410

Like the motion in *Claudet*, the Ryan Defendants' Motion speaks to the purported frivolity of the entire action, even stating that the action should be dismissed, yet only attacks three counts.  They make no explanation as to why Plaintiffs have no adequately pled Federal and State RICO, only mere mention of an affirmative defense in a foreclosure suit.  They do not address why fiduciary duties owed to Plaintiffs were not breached (Count 7).  They do not state why Plaintiffs' argument for breach of anti-trust law fails (Count 4 and 5).  There is no mention as to why Defendants' actions do not reach the level of conspiracy (Count 9).  No argument is made as to why the covenant of good faith and fair dealing has not been breached (Count 10) nor why abuse of process did not occur (Count 12).  Inexplicably and unethically, the Ryan Defendants, through their broad assertion of the entire Complaint being frivolous, seek attorney's fees for defending counts **that are not directed to them** (Count 11, 13, 15).

In the limited counts that the Ryan Defendants do mention in their motion, Counts 3 (FDCPA), 6 and 14 (CCPA), they make no mention nor argument as to why these counts are frivolous, only stating "Plaintiffs fail to state any facts supporting the conclusory allegation that the RYAN Defendants are debt collectors under federal law, and fail to include any reference to the RYAN defendants whatsoever." (Doc. 174, p. 16).  Again, this is strikingly similar to the

opinion written in *Claudet:* "Defendant's reference to the substantive law is even less thoughtful. As to the TCPA, Defendant fails to actually cite the statute, let alone discuss relevant caselaw. As to the FCCPA, Defendant does little more than string-cite three non-binding cases for the actual knowledge requirement. It goes without saying that such deficiencies amount to a violation of Local Rule 3.01(a), which requires "a memorandum of legal authority in support of" a motion."  Contrarily, in their Complaint, Plaintiffs identified the Ryan Defendants as a debt collector as defined by Federal law, identified why they violated the law, identified which assessments were in violation of the law, and expressly incorporated by reference these definitions into future counts.

"The use of Rule 11 as an additional tactic of intimidation and harassment has become part of the so-called "hardball" litigation techniques espoused by some firms and their clients. Those practitioners are cautioned that they invite retribution from courts which are far from enchanted with such abusive conduct.  A court may impose sanctions on its own initiative when the Rule is invoked for an improper purpose. *[citation omitted].*"  *Gaiardo.*

The Ryan Defendants' motion is filed solely to harass and intimidate Plaintiffs and their Counsel, **an improper purpose**.  This becomes even more evident when the motion is viewed not only of its time of service, but also in light of the authoritative case law that sets forth requirements for such motions that the Ryan Defendants wholly ignored.  Rule 11 motions, which carry very serious penalties and are cause for heightened concern, cause the target of the motion to suffer the fear and anxiety inherent with receiving and responding to such a motion, not unlike what Plaintiffs suffered over the Christmas and New Year's holidays.

3. ***The Ryan Defendants' Remaining Arguments Fail***

The Ryan Defendants further contend that the Complaint and Amended Motion for Class Certification is frivolous because res judicata bars the actions, a statute of limitations has run, and because the CC&R's are valid.

*CC&R*

In related filings in state court, all parties admit that the original CC&Rs, which were the only governing documents provided by the developer to lot owners, did not mandate country club memberships and made the Developer's decision to build amenities entirely discretionary, creating a direct conflict with the provisions contained in the invalid adopted and served Amended CC&Rs.  Further, the Homeowners Association Act prohibits Developer Amendments prior to turnover (decreed by the Lake County Court as August 29, 2005) without lot owner approval or that are unreasonable.  Binding precedent also prohibits unreasonable amendments, which include those which change the nature of the community or the economic burdens between the developer and the lot owners.  More so, the amendments to the CC&Rs were never preliminarily served on lot owners as required by the Homeowners Association Act or the Governing Documents and thus lacked notice of their contents.

The Governing Documents prohibit Amendment without lot owner approval after the first conveyance of a lot, which occurred 10 days before the filing of the Amendment, on May 7, 2004.  On that date, a Warranty Deed was conveyed from the original community developer, the Ginn Company, to Richard Janiak for lot 3 of Bella Collina.

The Homeowners Association Act requires assessments and, in particular, special assessments to be approved annually by the Board and the lot owners at duly noticed meetings, which never occurred.  The Governing Documents prohibit special assessments for any expense

not related to capital assets owned by the POA.  The POA never received lot owner approval or

satisfied legal requirements for technology fees, lotscape fees, late fees, and fines.

Simply put, these CC&R's are invalid for the numerous foregoing reasons.

### *Res Judicata*

The Ryan Defendants seek to rehash arguments made in the motion to dismiss.  Plaintiffs have

already responded at length regarding the issue of res judicata in their Response to All Motions

to Dismiss (Doc. 64) and incorporate their response as though set forth at length.

For a prior judgment to bar a subsequent action under the doctrine of res judicata, the

following requirements must be met: (1) the prior judgment must have been a final judgment on

the merits; (2) the prior judgment must have been rendered by a court of competent jurisdiction;

(3) the parties, or those in privity with them, must be identical in both suits; and (4) the same

cause of action must be involved in both cases.  *Batchelor-Robjohns v. United States*, 788 F.3d

1280, 1285, 2015 U.S. App. LEXIS 9366, *12, 2015-1 U.S. Tax Cas. (CCH) P50,330, 115

A.F.T.R.2d (RIA) 2060, 25 Fla. L. Weekly Fed. C 1233

As Plaintiffs have argued in prior pleadings, res judicata does not apply.  The state court

cases were filed by the POA, to which the (Federal proceeding) Plaintiffs filed compulsory

counterclaims.  Other cases involved build compulsions and water well use claims asserted by

the POA, to which no counterclaims were filed.  All of the cases in which compulsory

counterclaims were asserted occurred before the acquisition of monopoly control by the DCS

Defendants and before many of the claims for relief contained in this proceeding accrued.  No

final judgment has been entered against Plaintiffs in the state cases.

Further, "Rule 11 'should not be invoked against an attorney who fails to dismiss a case after the opposing attorney submits evidence that a statute of limitations or res judicata bars the suit.'" [Gaiardo at 484]. *Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 68, 1988 U.S. App. LEXIS 2999, *7, 108 Lab. Cas. (CCH) P10,368, 10 Fed. R. Serv. 3d (Callaghan) 1026

*Statute of Limitations*

The Ryan Defendants have raised the issue of the applications of certain statute of limitations but do not identify which counts they claim apply; rather a broad catch all of the governing amendments of Bella Collina are stated and Plaintiffs are left wondering which counts the Ryan Defendants seek to discredit.

Responding in kind to the broad assertions set forth by the Ryan Law Group, statute of limitations defenses normally depend on a weighing of numerous factual circumstances, none of which have been set forth here.

Further, "Rule 11 'should not be invoked against an attorney who fails to dismiss a case after the opposing attorney submits evidence that a statute of limitations or res judicata bars the suit.'" [Gaiardo at 484]. *Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 68, 1988 U.S. App. LEXIS 2999, *7, 108 Lab. Cas. (CCH) P10,368, 10 Fed. R. Serv. 3d (Callaghan) 1026.

## Conclusion

The Ryan Defendants' Motion for Rule 11 Sanctions has been used for an improper purpose. It is wrought with deficiencies and they have wholly failed to identify a single reason

why Plaintiffs' claims should be subjected to sanctions.  Accordingly, their motion should be

**denied**.

### Request for Attorney's Fees

"Upon the filing of a Rule 11 motion, "the court may award to the prevailing party the

reasonable expenses, including attorney's fees incurred for the motion." Fed. R. Civ. P.

11(c)(2) (emphasis added). "[T]he filing of a motion for sanctions is itself subject to the

requirements of the rule and can lead to sanctions." Fed. R. Civ. P. 11(b), (c) advisory

committee's note to 1993 amendment. "Ordinarily, this does not require a cross-motion for

sanctions, since a court is authorized to award fees to a party that successfully opposes a Rule

11 sanctions motion." Smith, 750 F.3d at 1260. "Thus, when a party files a Rule 11 motion for an

improper purpose, the court may award fees to the target of the motion."" *Claudet v. First Fed.*

*Credit Control, Inc*., 2015 U.S. Dist. LEXIS 165076, *8, 25 Fla. L. Weekly Fed. D 259, 2015

WL 7984410

The Ryan Defendants have presented their Rule 11 motion for an improper purpose.

Plaintiffs are not required to file a cross-motion for sanctions as this court has the authority to

award Plaintiffs attorney's fees for having to defend this improper motion.

Accordingly, Plaintiffs request an award of attorney's fees for having to defend this Rule

11 motion filed for improper purposes.

**Dated**: January 5, 2018                              Respectfully submitted,


                                                        /s/ E. Timothy McCullough
                                                        E. TIMOTHY McCULLOUGH, Esq.
                                                        Trial Counsel for Plaintiffs
                                                        Florida Bar Number: 0033624
                                                        7463 Conroy Windermere Rd., Suite A
                                                        Orlando, FL 32835
                                                        Telephone: (407) 601-6941
                                                        Fax: (407) 601-5982
                                                        timlaw81@aol.com


## CERTIFICATE OF SERVICE

I certify that on January 5, 2018, I electronically filed the foregoing with the Clerk of the
Court by using the CM/ECF system, of which will send a notice of electronic filing to all counsel
of record.


                                                        /s/ E. Timothy McCullough, Esq.
                                                        **Attorney for Plaintiffs**