## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### OCALA DIVISION

NO. 5: 17-CV-86-OC-40-PRL

JAMES L. SHELTON
and VIRGINIA SHELTON,

       Plaintiffs,

v.                                      **RICO CASE STATEMENT**

DWIGHT C. SCHAR, et al.

       Defendants.

_____/

### RICO CASE STATEMENT

Plaintiffs, James Shelton and Virginia Shelton, by and through the undersigned, submit their RICO Case Statement, stating as follows:

**1. State whether the alleged unlawful conduct is in violation of 18 U.S.C. 1962(a), (b), (c) and/or (d).**

The Defendants' unlawful activity is in violation of 18 U.S.C. 1962(b), (c), and (d).

**2. List each Defendant and state the alleged misconduct and basis of liability of each Defendant.**

    a. Dwight C. Schar, Paul E. Simonson, Richard Arrighi, Randall Greene, James Ryan, Michael Ryan, and David Burman are individuals who conspired to conduct the affair of an enterprise through a pattern of racketeering. As more particularly described herein, these individuals, in concert with one another, concocted an intricate and complex scheme to utilize a non-profit organization as a mechanism with which to extort real property from hundreds of individuals. Notably, Richard Arrighi, is a felon who was convicted of embezzling millions of

dollars from the Massachusetts State Treasury.

James Ryan and Michael Ryan practice law under the banner of "The Ryan Law Group."

b.  Defendants Rocking Red H, LLC, DCS I, DCS II, DCS III, DCS IV, DCS IV-A, and DCS V are holding companies that were created for the purpose of receiving extorted property to clear any encumbrances clouding title and convey the property free and clear to DCS Real Estate Investments, LLC.

c.  Defendant Rick Scharich is an individual who acted in concert with Schar, Simonson, Arrighi, Greene, J. Ryan, M. Ryan and Burman as a conduit to receive extorted lots to clear any encumbrances clouding title and convey the property free and clear to DCS Real Estate Investments, LLC.

d.  Defendants Keith Clarke, Paul Lebreux, and Cullen D'Ambrosio are individuals who acted in concert with Schar, Simonson, Arrighi, Greene, J. Ryan, M. Ryan, and Burman to effectuate various components of the overall scheme, which actions are in agreement with and in furtherance of the common and overall objective of the racketeering enterprise: "DCS wants Lots."

e.  Defendant The Club at Bella Collina is a for-profit corporation owned by DCS and controlled by Schar and Simonson.  The Club at Bella Collina encumbers lots within the community with illegal special assessments, and in turn sues individual lot owners through the non-profit Bella Collina POA to collect the illegal special assessments.  The Club at Bella Collina is almost always, if not always, a signatory on the confidential settlement agreement that extorts the property and directs its conveyance either to DCS directly or one of the numerous third party

holding companies designed to hold lots while encumbrances can be written off and removed.

**3. List the alleged wrongdoers, other than the Defendants listed above, and state the alleged misconduct of each wrongdoer.**

Vincent Soulsby is an individual who resides in Lake County, Florida.  Mr. Soulsby was approached by Defendant Greene on or about February 17, 2017 and asked to provide false testimony while under oath.  Mr. Soulsby did in fact proffer this false testimony, which was intended to harm Plaintiff Shelton, Expert Witness William Sentner, Former Plaintiffs Bart and Kathryn Sutherin, and Plaintiffs' Counsel, E. Timothy McCullough.

His felonious actions are in violation of 18 U.S.C. § 1512(b)(1), which classifies witness tampering as racketeering activity.  Numerous Defendants utilized the false testimony to enhance their defense of this proceeding, in furtherance of the conspiracy, and in agreement with and in furtherance of the common and overall objective: "DCS wants Lots."

**4. List the alleged victims and state how each victim was allegedly injured.**

Plaintiffs, James and Virginia Shelton, have been victimized by the Defendants' pattern of racketeering activity, overt acts, fraudulent scheme and conspiracy.  The goal of the conspiracy is to acquire parcels of real property free and clear for DCS Real Estate Investments, LLC.  In order to achieve this goal, the parcels of real property in question needed to be devalued through various means, as more particularly described herein and in the Amended Complaint.  This diminution of value harmed Plaintiffs.  Similarly situated individuals were injured in similar fashion, and in hundreds of cases, these similarly situated individuals lost their parcels of real property to DCS Real Estate Investments, LLC.

**5.  Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim.  A description of the pattern of racketeering shall include the following information:**

    **a.  List the alleged predicate acts and the specific statutes which were allegedly violated;**

Each of the Individual Defendants' predicate acts of "racketeering" within the meaning of

18 U.S.C. § 1961(1) include, but are not limited to:

***18 U.S.C. 1341 - Mail Fraud***: Schar, Simonson, Greene, Arrighi, J. Ryan, M. Ryan and Burman

violated 18 U.S.C. 1341 by directing and/or causing the non-profit Bella Collina POA to send or

receive materials via the U.S. mail or commercial interstate carriers for the purpose of executing

their fraudulent scheme to extort real property from third party individuals and clear

encumbrances on the title through various means, including the write off of POA assessments.

Use of the United States Postal Service ("USPS") and other commercial interstate carries

are the regular way in which Schar, Simonson, Greene, Arrighi, J. Ryan, M. Ryan and Burman

perpetuated the scheme across state lines when mailing correspondence to out of state

individuals similarly situated to Plaintiffs to begin the process of acquiring their real property.

Use of the USPS is also the regular way in which Schar, Simonson, Green Arrighi, J.

Ryan, M. Ryan and Burman mailed, or directed to be mailed, anonymous and intimidating letters

directly to Plaintiffs to intimidate them in furtherance of the overall conspiracy and scheme.

These anonymous and intimidating letters bore postmarks in Texas and Georgia.

***18 U.S.C. 1343 - Wire Fraud***: The Individual Defendants have violated 18 U.S.C. § 1343 by

directing or causing the transmission of and receipt of monies by wire for the purpose of

executing their fraudulent scheme to extort real property from third parties, including varying

amounts of money accompanying the real property.

Defendants Burman and Greene utilized e-mail communications to direct various write offs of encumbrances of the subject real property that were owed to the non-profit POA.

Defendants Greene and Simonson utilized e-mail communications to keep Schar informed of the progression of the fraudulent scheme.

The predicate acts of extortion are the regular way in which Schar, Simonson, Greene, Arrighi, J. Ryan, M. Ryan and Burman operated the Bella Collina POA in as much as the organization was not engaged in legitimate business ordinarily conducted by similar non-profit property owners associations, and acts of extortion were necessary for the successful use of acquiring the subject real property.

***18 U.S.C. § 1512(b)(1) – Witness Tampering***: On or about February 17, 2017, Defendant Greene acquired a confidential work product copy of Plaintiffs' Original Complaint.

Following this acquisition, Defendant Greene corruptly and intentionally persuaded convicted felon Vincent Soulsby to provide false testimony as a means to enhance the forthcoming defense of the claims asserted in this action.

On February 22, 2017, Soulsby did indeed provide false testimony at a unilateral deposition that was attended only by Soulsby, Greene and Attorney Michael Crosbie.

Acting in concert with Defendant Greene, this transcript of this deposition has since been utilized by Defendants Schar, Simonson, Arrighi, Rocking Red H, LLC, Scharich, DCS I, DCS II, DCS III, DCS IV, DCS IV-A, and DCS V in aid of their defense of the claims set forth in this proceeding, including the claims of racketeering. (Doc. 128-2 & 145-5)

The utilization of this false testimony was done so in furtherance of the conspiracy and in agreement with and in furtherance of the common and overall objective: "DCS wants Lots."

***18 U.S.C. 1951 – Extortion***: Defendants Schar, Simonson, Greene, Arrighi, J. Ryan, M. Ryan and Burman used the non-profit Bella Collina POA as a means to obtain real property from third parties, with consent, through fear.

Furthermore, the intricate planning required to carry out and conceal the predicate act of extortion, which includes silencing each victim through the use of settlement agreements containing exorbitant liquidated damages and the ongoing threat of further SLAPP litigation, implies a threat of continued criminal activity, as does the fact that the Defendants continue to receive real property through present day.

**b. Provide the dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts;**

***Mail Fraud:*** The above-named Defendants in 5(a) have utilized the mail system on a consistent basis since June 26, 2012, sending thousands of letters to various property owners through the mail, including monthly and quarterly invoices containing illegal charges upon which illegal lawsuits predicated upon these unenforceable covenants originated.

Anonymous and intimidating mailings have been sent via the USPS on the following dates:

i. On or about March 9, 2018 – Unknown State of Origin
ii. On or about January 18, 2018 – San Antonio, TX
iii. On or about November 30, 2017 – Austin, TX
iv. On or about November 9, 2017 – San Antonio, TX
v. On or about November 7, 2017 – San Antonio, TX
vi. On or about July 12, 2017 – San Antonio, TX
vii. On or about June 30, 2017 – Atlanta, GA
viii. On or about June 20, 2017 – Atlanta, GA

***Extortion***: The above-named Defendants in 5(a) have extorted hundreds of parcels of real property while utilizing illegal lawsuits predicated upon unenforceable covenants to the

community governing documents.  Certain unenforceable covenants, passed by Greene, Burman, Clarke, Arrighi and Lebreux, "authorized" Defendant Simonson to enter into an agreement on behalf of The Club at Bella Collina with the DCS-controlled POA, by and through Michael Ryan, James Ryan, and the Ryan Law Group, to illegally sue each lot owner in the community for illegal assessments.

Always settling the case and never proceeding to trial, the de-valued and over encumbered lot would be conveyed either to DCS directly or to a third party holding company to clear the encumbrances and then convey to DCS free and clear.  This settlement always involved a confidentiality agreement protected by exorbitant liquidated damages clauses, effectively silencing each individual and preventing lot owners, including Plaintiffs, from rallying together.

This occurred hundreds of times from the period of June 26, 2012 to present.

***Witness Tampering***: On or about February 17, 2017, Defendant Greene acquired a confidential work product copy of Plaintiffs' Original Complaint.  Following this acquisition, Defendant Greene corruptly and intentionally persuaded convicted felon Vincent Soulsby to provide false testimony as a means to enhance the forthcoming defense of the claims asserted in this action.

On February 22, 2017, Soulsby did indeed provide false testimony at a unilateral deposition that was attended only by Soulsby, Greene and Attorney Michael Crosbie.

Acting in concert with Defendant Greene, the transcript of this deposition has since been utilized by Defendants Schar, Simonson, Arrighi, Rocking Red H, LLC, Scharich, DCS I, DCS II, DCS III, DCS IV, DCS IV-A, and DCS V in aid of their defense of the claims set forth in this proceeding, including the claims of racketeering. (Doc. 128-2 & 145-5)

***Wire Fraud***: See Forthcoming Answer to Subsection C.

***Concealing the Predicate Acts:*** On or about March 22, 2017, in an effort to intimidate Plaintiffs

and act in furtherance of the conspiracy, Defendant Greene created a website in which Plaintiffs

received violent threats ("the mob will thin them out") and relentless attacks were launched

against Plaintiffs' counsel to destroy the attorney client relationship.  Hundreds of posts have

been made to the website since Greene's initial post, with almost all subsequent posts having

been made through the use of a Virtual Private Network ("VPN") with the sole intention of

cloaking the poster in a shroud of anonymity.

> **c.  If the RICO claim is based on the predicate offenses of wire fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. (b).  Identify the time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged representations were made;**

The above-named Defendants in 5(a) have engaged in the transmission of data over

a wire-based communication technology innumerable times since 2012.

The first known e-mail communication was sent by Defendant Simonson in May 2012, in

which he set up a meeting amongst himself, Greene, Arrighi, and J. Ryan in a boathouse owned

by Defendant Schar.  Defendant Simonson averred in an affidavit supporting a motion for

protective order that he sends a substantial amount of e-mails, including to Defendant Schar to

keep him updated of what transpires in the community.  Greene also engages Schar through

wire-based communications to keep him informed of what transpires in the community.  Other

individual Defendants have utilized wire-based communication numerous times to communicate

in furtherance of the conspiracy, including Lebreux (Canada) and Scharich (Michigan).

The predicate acts of wire fraud are also the regular way in which Schar, Simonson,

Greene, Arrighi, J. Ryan, M. Ryan and Burman transferred ill-gotten monetary gains as a result

of their acquisition of the subject real property through illegal lawsuits predicated upon

unenforceable covenants.  These transactions have occurred numerous times, on a frequent basis, since June 2012.

Defendants Burman and Greene utilized e-mail communications to direct various write offs of encumbrances of the subject real property that were owed to the non-profit POA, including on September 3, 2014, September 4, 2014, and September 9, 2014.

**d.  State whether there has been a criminal conviction for violation of the predicate acts;**

Plaintiffs are unaware of any criminal convictions for the aforementioned predicate acts. However, Defendant Arrighi has been previously convicted of embezzlement in the State of Massachusetts.

**e.  State whether civil litigation has resulted in a judgment in regard to the predicate acts;**

No civil litigation has resulted in any final judgments in regard to any of the predicate acts.

**f.  Describe how predicate acts form a "pattern of racketeering activity;" and**

The Individual Defendants' predicate acts form a "pattern of racketeering activity" of multiple acts of racketeering activity within the past 10 years. In fact, each of the Individual Defendants have committed, directed, or authorized hundreds or thousands of acts of racketeering while conspiring to extort over 600 parcels of real property.

Each predicate act was related, had a similar purpose, involved the same or similar participants and methods of commission, had similar results, and impacted similar victims, including Plaintiffs.

The predicate acts of racketeering activity were related to each other in furtherance of the scheme described above to extort real property from third parties and clear the title of

encumbrances by any means necessary, including through the use of holding companies to create tax deeds and writing off POA encumbrances, in order for DCS to receive conveyance of the subject property free and clear.

The predicate acts of racketeering have been and are continuous. There was repeated conduct during the period between as early as 2012 and continuing to the present. The conduct therefore constituted a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

**g.   State whether the alleged predicate acts relate to each other as part of a common plan.  If so, describe in detail.**

Each aforementioned predicate act was related, had a similar purpose of being part of the equation to extort real property for DCS, involved the same or similar participants and methods of commission, had similar results, and impacted similar victims, including Plaintiffs.

The predicate acts of racketeering activity were related to each other in furtherance of the scheme described above to extort real property from third parties, including Plaintiffs, and convey that property to DCS free and clear.

The predicate acts of racketeering have been and are continuous. There was repeated conduct during the period between as early as 2012 and continuing to the present. The conduct therefore constituted a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5) and are related to the other as integral parts of a fraudulent criminal scheme.

**6.   Describe in detail the alleged enterprise for each RICO claim.  A description of the enterprise shall include the following information:**

**a.   State the names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise;**

The Bella Collina Property Owners Association, Inc. is the enterprise.

**b.** **Describe the structure, purpose, function and course of conduct of the enterprise;**

The Bella Collina Property Owner's Association, Inc., a non-profit organization, is an ongoing "enterprise" as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

It is under the control of DCS Real Estate Investments, LLC, who installed their own employees onto the Board for the POA.  This occurred despite Florida law dictating that the POA should have been turned over to property owners on August 29, 2005.

The POA has an ascertainable structure and purpose beyond the scope and commission of the Individual Defendants' predicate acts and conspiracy to commit such acts, and the non-profit organization is separate and distinct from each of the Individual Defendants.

The POA has engaged in a series of fraudulent and unlawful practices. The POA engaged in this course of conduct at the direction, and with the approval, of each of the Individual Defendants as part of their unlawful racketeering scheme. The object of the racketeering scheme was to utilize the non-profit organization as a debt collector for a for-profit country club to initiate hundreds of illegal lawsuits predicated upon unenforceable covenants against Plaintiffs and similarly situated individuals, founded upon numerous unilateral self-serving amendments to the community's governing documents that authorize the same.

The ultimate objective of the scheme is to extort real property from third party individuals and convey that property free and clear to DCS while depriving the POA of the monies that it sued for.

Defendants Schar, Simonson, Greene, Arrighi, Burman, M. Ryan and J. Ryan have participated in the conduct of and have controlled and operated the POA enterprise by, among other things, directing, authorizing, or allowing the passage of the unilateral self-serving amendments, directing write offs of POA monies to unencumber lots for DCS, directing the conveyance of lots to DCS rather than the POA, engaging in contractual relations on behalf of the non-profit POA for the express purpose of benefitting DCS, and engaging in activities that cover up the foregoing.

   c.   **State whether any Defendants are employees, officers or directors of the alleged enterprise;**

Defendant Greene is the President of the POA and a concurrently an officer board member.  He holds or has held other executive officer positions for the DCS entities.

Defendant Burman is an officer board member of the POA.

Defendant Arrighi was at one time an officer board member of the POA.  He holds or has held other executive officer positions for the DCS entities.

Defendants Clarke and Lebreux are officer board members of the POA.

Defendant Schar owns DCS Real Estate Investments, LLC, which controls the non-profit POA.

Defendant Simonson manages DCS Real Estate Investments, LLC, which controls the non-profit POA.

Defendant M. Ryan is employed to represent the non-profit POA as its an attorney, although no fee agreement between M. Ryan and the POA is known to exist.

Defendant J. Ryan is employed to represent the non-profit POA as its an attorney, although no fee agreement between J. Ryan and the POA is known to exist.

### d. State whether any Defendants are associated with the alleged enterprise;

Aside from the aforementioned employment relationships, board memberships, and ownership interests, and relationships that exist to perpetuate certain aspects of the fraudulent scheme, to Plaintiffs' knowledge, each of the Individual Defendants in which the RICO count is asserted against is not otherwise associated with the POA Enterprise.

### e. State whether you are alleging that the Defendants are individuals or entities separate from the alleged enterprise, or that the Defendants are the enterprise itself, or members of the enterprise; and

Each of the Individual Defendants has an existence separate and distinct from the enterprise. Aside from the aforementioned employment relationships, board memberships, and ownership interests, and relationships that exist to perpetuate certain aspects of the fraudulent scheme, each of the Individual Defendants in which the RICO count is asserted against is not otherwise associated with the POA Enterprise.

### f. If any Defendants are alleged to be the enterprise itself, or members of the enterprise, explain whether such Defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.

The Individual Defendants conducted or participated in the affairs of the enterprise through the pattern of racketeering activity, and they conspired to conduct or participate in the affairs of the enterprise through the pattern of racketeering activity. The Individual Defendants are not the enterprise.

### 7. State and describe in detail whether you are alleging the pattern of racketeering and the enterprise are separate or have merged into one entity.

The non-profit POA enterprise has an ascertainable structure separate apart from the pattern of racketeering activity in which the Individual Defendants have engaged.

**8. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity.  Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

The enterprise functions by collecting from its members quarterly assessments, some of which are, or could be legitimate, and non-fraudulent.  However, the individual Defendants, through the enterprise, have engaged in a pattern of racketeering activity by using the POA, a non-profit organization, to collect fraudulent and illegitimate assessments meant to encumber and de-value the subject real property.  Once encumbered and de-valued, the POA settles ongoing litigation with that particular individual and DCS retains any recovery from the litigation.  This process has been detailed at length in both the Amended Complaint and in this Case Statement.

**9. Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.**

The non-profit POA enterprise does not retain a benefit form the pattern of racketeering activity.  Rather, individual Defendants conspired to commit more than two predicate acts and use the non-profit POA as the means with which they could achieve their common goals.

**10. Describe the effect of the activities of the enterprise in interstate or foreign commerce.**

The non-profit POA is responsible for governing a community, which at all relevant times, involved individuals who reside outside of the State of Florida and individuals who reside outside of the United States.  Correspondence and other communications are regularly sent across state lines either via mail or wire.  Defendant Scharich is also a resident of Michigan and numerous lot conveyances to DCS from Scharich originated in Michigan.

**11. If the Complaint alleges a violation of 18 U.S.C. 1962(a), provide the following information:**

    **a. State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and**

    **b. Describe the use or investment of such income.**

Plaintiffs did not allege a violation of U.S.C. 1962(a).

**12. If the Complaint alleges a violation of 18 U.S.C. 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.**

On May 14, 2012, Defendants J. Ryan, Arrighi, Greene, Simonson and others met in a

boathouse owned by Defendant Schar to discuss the purchase of the Bella Collina community,

which purchase would include approximately 50 developer lots and a country club within the

community.  The remaining lots, approximately 751, were previously purchased by third parties.

At this same meeting, these Defendants also discussed how they would acquire the lots

owned by third parties and the budget that Schar would provide for the endeavor.

Subsequently, DCS refused to turn over the community property owner's association as

required by governing statutes and instead installed its own employees and agents as the

president and officers of the board of directors.  DCS was now able to unilaterally amend the

community's governing documents at will for its own benefit, allowing DCS to utilize the non-

profit POA as a debt collector for the for-profit country club.  Seeking both club dues and

assessments, the POA initiated approximately 400 illegal lawsuits predicated upon unenforceable

covenants against its members on both its own behalf and on behalf of the country club.  The

POA drove the litigation and when real property was acquired through settlement, it was

conveyed either directly to DCS or to a third party holding company to clear encumbrances and

in turn convey to DCS title free and clear.

**13. If the Complaint alleges a violation of 18 U.S.C. 1962(c), provide the following information:**

   **a. State who is employed by or associated with the enterprise; and**

Plaintiffs incorporate their response to RICO Case Statement Question 6, Subsection C as though set forth at length.

   **b. State whether the same entity is both the liable "person" and the "enterprise" under 1962(c).**

The same entity is not both the liable person and the enterprise under § 1962(c).

**14. If the Complaint alleges a violation of 18 U.S.C. 1962(d), describe in detail the alleged conspiracy.**

Defendants Schar, Simonson, Greene, Arrighi, M. Ryan, J. Ryan, Burman, Aegis, Lebreux, Clarke, D'Ambrosio, Rocking Red H, LLC, Scharich, and DCS I-V are employed by or associated with the Bella Collina POA enterprise.

Defendants Schar, Simonson, Greene, Arrighi, M. Ryan, J. Ryan, Burman, Aegis, Lebreux, Clarke, D'Ambrosio, Rocking Red H, LLC, Scharich, and DCS I-V knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Bella Collina POA's affairs through a pattern of racketeering activity consisting of repeated violations of the predicate acts previously set forth, and agreed to and acted in furtherance of the common and overall objective: "DCS wants Lots."

In furtherance of the conspiracy, Defendants D'Ambrosio and Simonson jointly created Rocking Red H, LLC for the express purpose of receiving extorted lots that were sued for through the Bella Collina POA, clearing the encumbrances from these lots through the means

more particularly described above, and conveying title to DCS Real Estate Investments, LLC

free and clear, which actions are in agreement with and in furtherance of the common and overall

objective: "DCS wants Lots."

In furtherance of the conspiracy, Defendant Scharich has expressly agreed through his

actions to receive extorted lots that were sued for through the Bella Collina POA, assist in

clearing encumbrances from these lots through the means more particularly described above, and

conveying title to DCS Real Estate Investments, LLC free and clear, which actions are in

agreement with and in furtherance of the common and overall objective: "DCS wants Lots."

In furtherance of the conspiracy, Defendants Lebreux and Clarke allowed the Simonson to

dictate amendments and other Bella Collina POA actions, and signed off on illegal amendments

and other enterprise affairs, which actions are in agreement with and in furtherance of the

common and overall objective: "DCS wants Lots."

In furtherance of the conspiracy, Defendants DCS I, DCS II, DCS III, DCS IV, DCS IV-A,

and DCS V received or were created to receive extorted lots that were sued for through the Bella

Collina POA, assist in clearing encumbrances from these lots through the means more

particularly described above, and conveying title to DCS Real Estate Investments, LLC free and

clear, which actions are in agreement with and in furtherance of the common and overall

objective: "DCS wants Lots."

In furtherance of the conspiracy, Defendant Aegis, a fiduciary, knowingly and willfully

enforced illegal provisions of governing documents that were unilaterally passed by Defendants

Simonson, Greene, The Bella Collina Club and DCS Real Estate Investments, LLC, and wrote

off significant amounts of assessments and other debt owed to the Bella Collina POA, which

actions are in agreement with and in furtherance of the common and overall objective: "DCS wants Lots."

**15. Describe the alleged injury to business or property.**

Each Defendant worked in concert with one another to obtain money and property belonging to Plaintiffs and similarly situated individuals.  Plaintiffs and similarly situated individuals have been injured in property and financially by each of the Defendants' overt acts of mail and wire fraud, the aiding and abetting of each other's acts of mail and wire fraud, by extortion of their property, by the tampering of a witness by certain Defendants, and by each of the individual Defendants' conduct of the enterprise's affairs through a pattern of racketeering activity.

Through the control of the POA, Plaintiffs and similarly situated individuals were each damaged in the amount of hundreds of thousands of dollars, if not millions, through the systematic de-value of real property and subsequent extortion and conveyance to DCS.

As a direct and proximate cause of the individual Defendants' conduct and/or participation, directly or indirectly, in the conduct of the affairs of an enterprise through a pattern of racketeering activity, Plaintiff has been injured in its business and property in an amount no lesser than $357,149.00 prior to treble damages.

**16. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.**

Individual Defendants' conduct and/or participation, directly or indirectly, in the conduct of the affairs of an enterprise through a pattern of racketeering activity, injured Plaintiffs and similarly situated individuals by destroying the value of their real property and then extorting that real property in furtherance of the express goal of the conspiracy: "DCS wants lots."

**17. List the damages sustained for which each Defendant is allegedly liable.**

Individual Defendants' conduct and/or participation, directly or indirectly, in the conduct of the affairs of an enterprise through a pattern of racketeering activity, injured Plaintiffs and similarly situated individuals by destroying the value of their real property and then extorting that real property in furtherance of the express goal of the conspiracy: "DCS wants lots."

Defendants Schar, Simonson, Greene, Arrighi, M. Ryan, J. Ryan, Burman, Aegis, Lebreux, Clarke, D'Ambrosio, Rocking Red H, LLC, Scharich, and DCS I-V are employed by or associated with the Bella Collina POA enterprise.

Defendants Schar, Simonson, Greene, Arrighi, M. Ryan, J. Ryan, Burman, Aegis, Lebreux, Clarke, D'Ambrosio, Rocking Red H, LLC, Scharich, and DCS I-V knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Bella Collina POA's affairs through a pattern of racketeering activity consisting of repeated violations of the predicate acts previously set forth, and agreed to and acted in furtherance of the common and overall objective: "DCS wants Lots."

In furtherance of the conspiracy, Defendants D'Ambrosio and Simonson jointly created Rocking Red H, LLC for the express purpose of receiving extorted lots that were sued for through the Bella Collina POA, clearing the encumbrances from these lots through the means more particularly described above and in the Amended Complaint, and conveying title to DCS Real Estate Investments, LLC free and clear, which actions are in agreement with and in furtherance of the common and overall objective: "DCS wants Lots."

In furtherance of the conspiracy, Defendant Scharich has expressly agreed through his actions to receive extorted lots that were sued for through the Bella Collina POA, assist in

clearing encumbrances from these lots through the means more particularly described above, and conveying title to DCS Real Estate Investments, LLC free and clear, which actions are in agreement with and in furtherance of the common and overall objective: "DCS wants Lots."

In furtherance of the conspiracy, Defendants Lebreux and Clarke allowed Simonson to dictate amendments and other Bella Collina POA actions, and signed off on illegal amendments and other enterprise affairs, which actions are in agreement with and in furtherance of the common and overall objective: "DCS wants Lots."

In furtherance of the conspiracy, Defendants DCS I, DCS II, DCS III, DCS IV, DCS IV-A, and DCS V received or were created to receive extorted lots that were sued for through the Bella Collina POA, assist in clearing encumbrances from these lots through the means more particularly described above, and conveying title to DCS Real Estate Investments, LLC free and clear, which actions are in agreement with and in furtherance of the common and overall objective: "DCS wants Lots."

In furtherance of the conspiracy, Defendant Aegis, a fiduciary, knowingly and willfully enforced illegal provisions of governing documents that were unilaterally passed by Defendants Simonson, Greene, The Bella Collina Club and DCS Real Estate Investments, LLC, and wrote off significant amounts of assessments and other debt owed to the Bella Collina POA, which actions are in agreement with and in furtherance of the common and overall objective: "DCS wants Lots."

Each party named in the foregoing paragraphs is jointly and severally liable with the next.

**18. List all other federal causes of action, if any, and provide the relevant statute numbers.**

Plaintiffs have asserted federal causes of action, in addition to the RICO causes of action,

pursuant to the following statutes:

18 U.S.C. § 1692 – Fair Debt Collection Practices Act

**19. List all pendant state claims.**

Breach of Fiduciary Duty.

Dated: March 12, 2018                                    Respectfully submitted,

                                                         /s/ E. Timothy McCullough
                                                         E. TIMOTHY McCULLOUGH, Esq.
                                                         Trial Counsel for Plaintiffs
                                                         Florida Bar Number: 0033624
                                                         7463 Conroy Windermere Rd., Suite A
                                                         Orlando, FL 32835
                                                         Telephone: (407) 601-6941
                                                         Fax: (407) 601-5982
                                                         timlaw81@aol.com

<h3 align="center">CERTIFICATE OF SERVICE</h3>

I certify that on March 12, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, of which will send a notice of electronic filing to all counsel of record.

                                                         /s/ E. Timothy McCullough, Esq.
                                                         **Attorney for Plaintiffs**