**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**OCALA DIVISION**

NO. 5: 17-CV-86-OC-40-PRL

JAMES L. SHELTON
and VIRGINIA SHELTON,

Plaintiffs,

v.

**RESPONSE IN OPPOSITION TO DOC. 220**

DWIGHT C. SCHAR, et al.

Defendants.

_______________________________________/

**RESPONSE IN OPPOSITION TO**
**DCS DEFENDANTS' MOTION FOR ATTORNEY FEES**

Plaintiffs, James Shelton and Virginia Shelton, by and through the undersigned, submit their Response in Opposition to the DCS Defendants' Motion for Attorney Fees, stating as follows:

**Factual Background**

Plaintiffs, and Former Plaintiffs, collectively filed their Original Complaint (Doc. 1) on March 2, 2017. The DCS Defendants responded to the Original Complaint by filing a Motion for More Definite Statement (Doc. 8). The crux of their Motion was that the Original Complaint was a "quintessential shotgun pleading" and that Plaintiffs should be ordered to file an amended complaint. Citing case law to that effect, the DCS Defendants stated that "a defendant faced with a shotgun complaint is not expected to frame a responsive pleading . . . rather, the defendant is expected to move, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement."

Subsequently, on March 28, 2017, this Motion was denied (Doc. 40) by Order of the Magistrate. In the opinion, Magistrate Lammens stated that "Certainly, one form of a quintessential shotgun pleading is when the complaint re-alleges each and every count into the subsequent counts, see *Anderson*, 77 F.3d at 366; but this Complaint does not do that and thus this case is distinguishable from *Nehrer*, upon which Defendants rely." The DCS Defendants subsequently filed a motion to dismiss.

It is also well established that, when faced with a shotgun pleading, the Court possesses the inherent authority to order repleader sua sponte. *Fikes v. City of Daphne*, 79 F.3d 1079, 1083 n.6 (11th Cir. 1996). Notably, the Court did not order repleader sua sponte (and in fact denied the Motion for More Definite Statement, explicitly stating that the Original Complaint was not a shotgun pleading). The case proceeded for nearly 11 months while the motion to dismiss remained pending.

On February 7, 2018, the Court dismissed the Original Complaint (Doc. 201). The opinion, the substance of which spanned approximately 10 pages, provided that "The Complaint is therefore due to be dismissed and repleaded in a more concise, coherent and orderly fashion." In the "Order and Adjudgment" section of the Order, it was stated that "The Complaint (Doc. 1) is DISMISSED WITHOUT PREJUDICE as an improper shotgun pleading." The Order also provided that Plaintiffs were to file an accompanying RICO Case Statement with the Amended Complaint.

Plaintiffs, under order of repleader, timely filed their Amended Complaint on February 28, 2018 (Doc. 211) and their RICO Case Statement (Doc. 216). In order to comply with the ordered repleader, Plaintiffs eliminated many legal theories asserted in the Original Complaint.

At no time did Plaintiffs James and Virginia Shelton provide a notice of voluntary dismissal for these claims.

The DCS Defendants subsequently filed an Answer to the Amended Complaint (Doc. 218) and now seek prevailing party attorney's fees, as well as attorney sanctions, from the dismissal of the Original Complaint.

## Argument

### *a. The DCS Defendants are not entitled to an award of attorney's fees against Plaintiffs' Attorney E. Timothy McCullough*

The DCS Defendants seek the imposition of sanctions against Plaintiffs' Counsel, E. Timothy McCullough, for what they perceive to be unreasonable and vexatious litigation. The statute upon which their claims are predicated is "intended to sanction attorneys who willfully abuse the judicial process by conduct tantamount to bad faith." (Doc. 220, P. 15).

The DCS Defendants then mischaracterize several instances in which they have completely disregarded the context surrounding the action, have not offered any evidence that the intent of this litigation is not to halt the illegal usurpation of the POA to extort real property from its members, or just simply offer completely misleading factual representations.

First, the DCS Defendants contend that Plaintiffs' counsel filed this instant lawsuit in bad faith and as a means to harm and harass the Defendants, especially Defendant Schar. However, the Defendants' plan is well document. Disregarded is the pre-purchase meeting of Bella Collina held in Defendant Schar's boathouse (admitted by the DCS Defendants in Doc. 218, Paragraph 58), the commingling of Schar's Bella Collina assets between DCS Real Estate Investments, LLC and his family trust (Doc. 172), and his undisputed ownership of Bella Collina that forms the basis of advertisement of his involvement in the community located at the bottom of almost

every "news update" on the Bella Collina website: "Bella Collina is owned and operated by DCS Investment Holdings, a private equity group based in West Palm Beach, Fla. The company is owned by Dwight C. Schar, co-owner of the Washington Redskins and founding chairman of NVR Inc., one of America's largest homebuilders."[1]

The DCS Defendants seek to mislead this Court by removing the shocked context of a private and privileged e-mail between clients and attorney, which communication reveals a reality that is tough to fathom: a billionaire philanthropist has partnered with a convicted felon to extort real property from hundreds of individuals. At a *bare minimum*, there is a good faith belief that his involvement in this racket is much more significant than the DCS Defendants will have this Court believe.

The Defendants do not offer one shred of evidence that the undersigned instituted this suit out of malice, rather than to protect and compensate his clients for provable harm which they suffer; to the contrary, certain DCS Defendants used this case as a platform to make repeated personal attacks on the undersigned. These attacks were coordinated with actions by the other Defendants.

Second, the DCS Defendants contend that a motion for preliminary injunction that would prevent Defendant Greene from hosting a disparaging website (which did not exist prior to the filing of this proceeding) that is geared 100% toward intimidating named Plaintiffs and seeking to destroy their relationship with their counsel. The facts surrounding this abhorrent site have been stated at length in Plaintiffs' Amended Complaint (Doc. 211) and in the Motion for Preliminary Injunction (Doc. 167).

---

[1] "Inaugural Major Champions Invitational Boasts Winners From Around The World" (March 14, 2018). https://www.bellacollina.com/inaugural-major-champions-invitational-boasts-winners

Unsurprisingly, the DCS Defendants seek to mislead this Court by stating that the motion to put an end to "negative online reviews about his legal services" and that "the motion was an unabashed attempt by Mr. McCullough to avoid public criticism for his behavior, not a legitimate attempt to advance a legally-cognizable claim…" **Not a single post is in relation to legitimate legal services**. Each post is made anonymously by an individual who has never been represented by Plaintiffs' counsel. It is indisputable that Defendant Greene was the creator and initial poster on this site. Each post, with the exception of Defendant Greene's initial post, was made through the use of a VPN to shield the user's identity.

Plaintiffs did not file the Motion for Preliminary Injunction to drive up legal fees and costs, as the DCS Defendants falsely contend, but did so to put an end to one part of the pervasive abuse and harassment the Plaintiffs have endured since initiating this proceeding. The term "Civil," as it pertains to this case, is ironic.

Third, the DCS Defendants contend that Plaintiffs' counsel has a "pattern of defying Court orders, disobeying Local Rules, and filing meritless pleadings and papers in this case." They falsely contend that Plaintiffs' counsel served a subpoena upon the website hosts of the aforementioned websites in order to obtain IP Addresses of the individuals who hid behind the veil of anonymity to disparage the undersigned and threaten Plaintiffs (i.e. "the mob will thin them out").

As Plaintiffs have already explained at length, at no time did they ever serve a subpoena upon any entity. Plaintiffs' counsel requested from each entity the process for obtaining IP information regarding the posts in question and followed the instructions that were provided. This process was detailed at length in a previous pleading (Doc. 181). However, unsurprisingly, the DCS Defendants ignore context and seek to mislead this Court. This is consistent with their

Defense of this proceeding, which has focused more on attacks against Plaintiffs' counsel than defending the racket that they have been accused of running since 2012.

Fourth, the DCS Defendants inexplicably accuse Plaintiffs' counsel of vexatious and harassing behavior by virtue of propounding discovery requests upon Defendants Scharich and Rocking Red H, LLC.

When convenient to delay discovery responses, the DCS Defendants object to a lack of particularization. When highly particularized, they object that the discovery is too voluminous. Regardless, the DCS Defendants, after almost a year of proceedings, failed to produce any good faith discovery.

Plaintiffs have produced thousands of documents at great time and expense. The Sheltons produced their documents in multiple formats in good faith effort to cooperate with Defendants' requests.

Plaintiffs have alleged an intricate and complex conspiracy that spans numerous Defendants working toward a common goal. (Doc. 211 and 216). Defendant M. Ryan memorialized the structure of this conspiracy and racket in a memo (Doc. 211). That memo provided for the conveyance of lots to third party holding companies, who would then hold the lots until the various encumbrances could be cleared through various unethical and criminal means (as more particularly described in Doc. 211 and 216). Defendants Rocking Red H, LLC and Scharich were two of the recipients of dozens of these lots. Each discovery request was finely tailored. Numerosity is inherent in how many lots each of these parties received. The DCS Defendants contention that discovery on numerous illegal conveyances is harassing and vexatious is ludicrous.

However, this has been "par for the course" when it comes to the DCS Defendants and discovery. Aside from some sparse documents that are available on the website for the Florida Division of Corporations, they have objected to almost every single request by Plaintiffs and have offered numerous excuses for their objections. Their lack of cooperation is egregious, yet they seek to maliciously accuse Plaintiffs' counsel of vexatious and harassing discovery tactics. Again, the DCS Defendants' defense of this action has focused more on attacks against Plaintiffs' counsel than defending the racket that they have been running since 2012.

Fifth, the DCS Defendants have sought to personally attack Plaintiffs' counsel from day one of this proceeding. In filing their Rule 11 motions, the DCS Defendants specifically and purposely excused Whatley Kallas, former counsel of Plaintiffs, from their motions and instead concentrated on the undersigned. The favorable treatment that was provided to Whatley Kallas was telling. They have not accused Widerman Malek of malice, but these two firms were both lead counsel in this case for the period of time of the vaguely alleged malice.

***b. The Court lacks jurisdiction over Former Plaintiffs in this case, nor have they received proper notice of the DCS Defendants' Motion for Attorney's Fees***

This Court lacks jurisdiction to award prevailing party fees against Former Plaintiffs Brad Heckenberg, Lana Heckenberg, Won Y. Shin Trust and PJS Rentals.

On December 28, 2017, Brad and Lana Heckenberg filed a notice of voluntary dismissal. (Doc. 178). Several days later, the Clerk was directed to terminate the Heckenbergs from the file. (Doc. 183)

Subsequently, the DCS Defendants filed a "Motion to Retain Jurisdiction Over Brad and Lana C. Heckenberg," (Doc. 186) which was denied. (Doc. 191).

Similar to the Heckenbergs, PJS Rental, LLC and the Won Y. Shin Trust, Won Y. Shin *Trustee*, filed a notice of voluntary dismissal on August 4, 2017. (Doc. 116 and 117). Several days later, the Clerk was directed to terminate each from the file. (Doc. 122)

Subsequently, the DCS Defendants filed a “Motion to Retain Jurisdiction” Shin and PJS (Doc. 125) which was denied. (Doc. 199)

When a plaintiff takes a voluntary dismissal, "the effect is to remove completely from the court's consideration the power to enter an order, equivalent in all respects to a deprivation of ‘jurisdiction.'" *Western Group Nurseries Inc. v. Ergas*, 167 F.3d 1354, 1358, 1999 U.S. App. LEXIS 2099, *11, 12 Fla. L. Weekly Fed. C 530.

In the instant action, the Court has clearly indicated that it would not entertain continuing jurisdiction over these Former Plaintiffs by dismissing all motions to retain jurisdiction. As of the date that the DCS Defendants filed their motion for attorney’s fees, the Court did not have jurisdiction over these parties or over any claims for attorney’s fees against them.

Further, these parties are no longer represented by the undersigned and did not receive formal notice of the subject motion.

***c. The DCS Defendants are barred by law from recovering “prevailing party fees”***

As stated in the preceding paragraphs of the instant motion, this Court granted the DCS Defendants’ motion to dismiss, finding that the Original Complaint was a shotgun pleading. Plaintiffs, in accordance with the Order dismissing the Original Complaint, filed their Amended Complaint and, by virtue of receiving answers to the Amended Complaint, cured the defects.

Prior to filing their answer to the Amended Complaint, the DCS Defendants did not file a responsive pleading, only a Motion for More Definite Statement (denied) and a Motion to Dismiss. It is well settled that a motion to dismiss is not a responsive pleading. *Carras v. Carpet Solutions, Inc.*, 2009 U.S. Dist. LEXIS 134481, *3 (M.D. Fla 2009); *Fla. Peninsula Ins. Co. v. Ken Mullen Plumbing, Inc*., 171 So. 3d 194, 198, (Fla. 5th DCA 2015).

All but one claim that the DCS Defendants seek an award of attorney's fees on are Florida state claims. If a party is entitled to attorney's fees by contract or statute, the Florida Supreme Court has ruled that a party must plead for attorney's fees in either the complaint or answer, or it will be deemed waived. *Stockman v. Downs,* 573 So.2d 835 (Fla. 1991). Further, there must be proper notice to the opposing party in order to recover attorney's fees. *Id.* The DCS Defendants' motion does not comply with the *Stockman* ruling and Plaintiffs were not properly noticed that the DCS Defendants would seek an award of attorney's fees on the Original Complaint.

Prior to answering the Amended Complaint, the DCS Defendants did not file an answer and thus cannot be awarded attorney's fees.

For the lone federal claim that the DCS Defendants seek attorney's fees, they (1) spent little to no time defending the allegations and (2) they cannot be considered a prevailing party or substantially prevailing party when no determination has been made upon the merits and the Court ordered repleader, effectively stating that it could not rule either way.

***d. Even if the DCS Defendants complied with the Stockman ruling, the individual Florida Statutes do not provide for an award of attorney's fees in this situation***

Florida courts have adopted the "American Rule" as it pertains to awarding attorney's fees to a prevailing party. A "prevailing party" is defined as a party in whose favor a judgment is rendered, regardless of the amount of damages awarded. *Black's Law Dictionary* (9th ed. 2009).

In the instant action, not only have the DCS Defendants failed to plead attorney's fees in an answer to the Original Complaint as required by *Stockman*, but there has been no judgment rendered nor can DCS show that, at that early stage in the litigation, a likelihood of success on the ultimate issues.

Rather, the DCS Defendants offer insulting and speculative assertions: "Similar to the former plaintiffs, and perhaps worse, the Sheltons proceeded forward on their unfounded claims for almost a year despite being made aware of the unsubstantiated and incomprehensible nature of their complaint." This assertion, speculative on its face, also implies that because the DCS Defendants are defending the claims that have been plead against them, they are correct and Plaintiffs/Former Plaintiffs should recognize this, despite no finding to the contrary. In fact, this Court initially ruled that the Original Complaint was not a shotgun pleading and Plaintiffs proceeded in accordance with the ruling.

The DCS Defendants' motion is tantamount to requesting this Court to review a dismissed complaint, while an Amended Complaint is currently being litigated, and decide the merits of it.

The Court's declaration that the Original Complaint is a shotgun pleading effectively precluded characterizations of any cause of action. Accordingly, the only causes of action that exist, or have ever existed, are contained in the Amended Complaint.

***e. The DCS Defendants are seeking an award of fees that they have already collected and which they performed little to no work in defending***

Even if this Court were to grant the DCS Defendants' meritless Motion for Attorney Fees, they have already ostensibly received numerous monetary settlements from various former Plaintiffs.

Following initiation of this proceeding, certain Plaintiffs decided to settle with the DCS Defendants (who control and are believed to be funding the other Defendants in this action) for various monetary amounts.

Based upon the DCS Defendants' refusal to meaningfully participate in discovery, it is presumed that they will refuse to disclose those individual settlement agreements to Plaintiffs to truly calculate how much money they have received to date for defending this proceeding and how much of any potential award (should this Court grant their meritless motion) should be offset by these amounts.

Further, the DCS Defendants, throughout the entirety of this proceeding, have extensively focused their defensive efforts on the RICO claims. They have made almost no effort in defending any of the other claims. Almost the entirety of the discovery process has been directed toward the RICO claims.

Should this Court choose to grant this Motion, Plaintiffs request entry of an Order for the disclosure of the settlement agreements for the following parties:

a. Bart Sutherin

b. Kathryn Sutherin

c. ITZ Group, LLC

d. CS Business Systems, Inc.

## CONCLUSION

The DCS Defendants have prematurely filed a Motion for Attorney's Fees in case that is not only ongoing, but which they have now responded to by filing an Answer. They seek to have this Court determine the merits of a previously dismissed and re-pled Complaint. They seek to impose attorney's fees and costs upon Former Plaintiffs who did not receive proper notice of the claims set forth against them.

Further, they seek to sanction the undersigned in an on-going proceeding without one shred of evidence that the undersigned initiated this suit out of malice and bad faith. They have provided favorable treatment to former counsel and other former plaintiffs, yet inexplicably seek to sanction the undersigned and punish Plaintiffs and certain Former Plaintiffs.

**WHEREFORE**, Plaintiffs, James and Virginia Shelton, request that this honorable Court:

a. Deny the DCS Defendants' Motion for Attorney Fees,

b. Award Plaintiffs attorney's fees and costs associated with defending this vexatious and improper motion, and

c. Award any further relief that this honorable Court deems proper.

Dated: March 28, 2018

Respectfully submitted,

/s/ E. Timothy McCullough
E. TIMOTHY McCULLOUGH, Esq.
Trial Counsel for Plaintiffs
Florida Bar Number: 0033624
7463 Conroy Windermere Rd., Suite A
Orlando, FL 32835
Telephone: (407) 601-6941
Fax: (407) 601-5982
timlaw81@aol.com

## CERTIFICATE OF SERVICE

I certify that on March 28, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, of which will send a notice of electronic filing to all counsel of record.

*/s/ E. Timothy McCullough, Esq.*
**Attorney for Plaintiffs**