UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**JAMES L. SHELTON and VIRGINIA L.
SHELTON, husband**

    **Plaintiffs,**

v.                                                                                  **Case No: 5:17-cv-86-Oc-PGBPRL**

**DWIGHT C. SCHAR, et al.**

    **Defendants.**

---

### REPORT & RECOMMENDATION[1]

In this now closed case, the DCS Defendants[2] filed a motion for attorney's fees against Plaintiffs Brad and Lana Heckenberg.[3] (Doc. 220). Previously, the Court granted the motion for attorney's fees but instructed the DCS Defendants to file a revised assessment of their fees that apportioned their fees for each individual Plaintiff, which the DCS Defendants have since done. (Doc. 232, 233). Plaintiffs filed an objection to the order, which was overruled. (Doc. 234, 246).

Following the order overruling Plaintiff's objections, the Court provided Plaintiffs an opportunity to respond to the DCS Defendants' revised assessment. (Doc. 248). Plaintiff's filed

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

[2] Richard C. Arrighi; Bella Collina Towers, LLC; The Club at Bella Collina, LLC; DCS Investments Holdings GP, LLC; DCS Real Estate Investments I, LLC; DCS Real Estate Investments II, LLC; DCS Real Estate Investments III, LLC; DCS Real Estate Investments IV, LLC; DCS Real Estate Investments IV-A, LLC; DCS Real Estate Investments V, LLC; DCS Real Estate Investments, LLC; Rocking Red H, LLC; Dwight C. Schar; Ricky L. Scharich; and Paul E. Simonson.

[3] It appears from a footnote in the DCS Defendants' reply, and the attached exhibit, that the two other Plaintiffs against whom fees were sought, the Won Y. Shin Trust and PJS Rentals, LLC, have settled for the amounts sought. (Doc. 257). Accordingly, the Court will not address awards against these Plaintiffs.

their response, to which the DCS Defendants filed a reply, and the matter is now ripe. (Doc. 250, 257).

## I. BACKGROUND

As the Court noted in its previous order, the original complaint ran just over ninety pages and asserted eighteen counts, based on numerous legal theories, against twenty-four Defendants. (Doc. 1). Defendants moved to dismiss the complaint, but the Heckenbergs voluntarily withdrew their claims under Federal Rule of Civil Procedure 41(a) while the motion to dismiss was pending. (Docs. 178).[4]

Now before the Court is the DCS Defendants' motion seeking attorney's fees for the cost of defending against Plaintiffs' claims under the Florida Homeowner's Act, the Florida Unfair and Deceptive Trade Practices Act, the Florida RICO and Antitrust Acts, and the Florida Consumer Collection Practices Act.

## II. DISCUSSION

In contesting the amount of fees in the revised assessment, Plaintiffs argue that the DCS Defendants are seeking fees for hours that are "excessive, redundant, and unnecessary" and that the DCS Defendants did not properly apportion their fees between the Plaintiffs. Before addressing these arguments, the Court will briefly discuss the DCS Defendants' entitlement to fees then turn to the lodestar method for calculating fees.

### A. Entitlement to Fees

The Court addressed, in its previous order, the DCS Defendants' entitlement to attorney's fees and need not belabor its previous analysis here. (Doc. 232). Briefly, under Florida law, when

---

[4] Ultimately, the District Court granted Defendants' motion to dismiss the original complaint as a shotgun pleading. (Doc. 201). The remaining Plaintiffs all eventually moved to voluntarily dismiss. The District Court granted their motion, and closed the case, but retained jurisdiction to consider any motion for attorney's fees. (Docs. 236, 247).

a plaintiff dismisses its claims without prejudice, the defendant is generally considered the prevailing party and can recover fees under the relevant fee-shifting statutes. *See Thornber v. City of Walton Beach*, 568 So. 2d 914, 919 (Fla. 1990); *Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc.*, 572 F. App'x 796, 801 (11th Cir. 2014).

As to the specific attorney-fee statutes at issue here, while the standards for awarding fees differ under the various provisions, under even the highest standard for assessing fees, Plaintiffs' are liable for the DCS Defendants' fees as their pleading was a shotgun complaint that lacked "substantial fact or legal support," "failed to raise a justiciable issue," and was "frivolous." (Doc. 232 pp. 4–8). *See* Fla. Stat., §§ 542.22(1), 559.77(2), 772.104(3). Each claim in Plaintiffs' ninety-page complaint reincorporated the previous 408 paragraphs, without providing any indication which factual allegations supported which factual claims, and relied on conclusory and unsupported allegations. (Doc. 1). *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (describing as a "shotgun pleading" a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action").

Accordingly, the DCS Defendants are entitled to fees under the Florida Homeowners' Act, the Florida Unfair and Deceptive Trade Practices Act, the Florida RICO Act, the Florida Antitrust Act, and the Florida Consumer Collection Practices Act. (Doc. 232 pp. 4–8).

### B. Lodestar Analysis

In determining a reasonable attorney's fee, the Court applies the federal lodestar approach, which is calculated by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate for the services provided by counsel for the prevailing party. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). The party seeking its fees "bears the burden of

establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Once the court has determined the lodestar, it may adjust the amount upward or downward based upon several factors, including the results obtained. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988).

"Ultimately, the computation of a fee award is necessarily an exercise of judgment, because 'there is no precise rule or formula for making these determinations.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436). Additionally, the Court is "an expert on the question [of attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman,* 836 F.2d at 1303 (internal quotation marks omitted). "Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).

### 1. Reasonable Hourly Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with the prevailing market rates. *Id*. The trial court, itself, is an expert on the question of the reasonableness of fees and may consider its own knowledge and experience. *Id*. at 1303.

The DCS Defendants request the following hourly rates: $415 for Michael D. Crosbie, Esq., a partner at Shutts and Bowen, LLP; $400 for Jennifer Sommerville, Esq., of counsel at Shutts and Bowen; and $210 for Nicole Ballante, Esq., an associate at the firm. (Doc. 233 ¶8). Mr.

Crosbie is a former Middle District law clerk with over twenty years of experience in the central Florida legal market. (*Id.* ¶7). He declares that he is familiar with hourly rates charged by attorneys in the area and that his firm's rate is consistent with those rates. (*Id.* ¶6).

Plaintiffs' expert, Nicholas A. Shannin, Esq., agrees that Mr. Crosbie's $415 per hour is a reasonable fee, although he does not comment on the other rates. (Doc. 250-1 ¶A). A review of decisions from this division shows that the prevailing market rate is not inconsistent with the proposed attorney's fees. *See, e.g.*, *Ranize v. Town of Lady Lake, Fla.*, No. 5:11-cv-646, 2015 WL 1037047, at *5 (M.D. Fla. Mar. 10, 2015) (awarding counsel a rate of $375 per hour in the Ocala market); *Am. Home Assurance Co. v. Weaver Aggregate Transp. Inc.*, 89 F. Supp. 1294, 1304 (M.D. Fla. 2015) (approving of $171–229 rate for an associate in the Ocala market). In addition, the Court has previously found Mr. Crosbie's $415 rate reasonable. (Docs. 115, 146).

Although Plaintiffs do not specifically address the hourly rates for the two other attorneys on the case, they do not present any objections to their rates either. Considering the seriousness of allegations made in Plaintiff's complaint, the complexity of the legal issues, and the volume of the factual allegations (along with Plaintiff's lack of opposition to the rates), the Court finds that the rates sought here are not unreasonable.

2. *Reasonableness of Hours Expended*

The next step in the lodestar analysis is to determine what hours were reasonably expended in the litigation. The attorney-fee applicant bears the initial burden of submitting evidence sufficient to allow the court to confirm that the requested fees are not excessive. *Barnes*, 168 F.3d at 428. Then, "'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'" *Id*. Attorneys "must exercise their own billing judgment to exclude any hours that are excessive, redundant, or otherwise unnecessary." *Galdames*

*v. N&D Inv. Corp.*, 432 F. App'x 801, 806 (11th Cir. 2011). If applicants do not exercise billing judgment, courts are obligated to do it for them. Courts may cut specific hours, or may engage in "an across-the-board cut," as long as the court adequately explains its reasons for doing so. *Id.*

Plaintiffs first argue that the number of hours expended by the DCS Defendants are "excessive, redundant, and unnecessary." (Doc. 250 p. 2). Plaintiff's expert, Mr. Shannin, opines that the number of hours expended by the DCS Defendants should have been capped at 324.8 hours, the number of hours billed by Mr. Crosbie. (Doc. 250-1 ¶B). Although Mr. Shannin concedes that all the hours claimed by the other two attorneys "undoubtedly" were actually performed, he maintains that a review of the record shows the work was redundant—the two other attorneys were asked to perform repetitive tasks that Mr. Crosbie could have done himself.

Mr. Shannin's only example, however, is an entry for 1.1 hours by Ms. Sommerville when she met with Mr. Crosbie to discuss strategy (.2 hours); reviewed Mr. Crosbie's case analysis (.2); and then researched the procedural and substantive deficiencies of the complaint (.7). (Doc. 233-1). The Court is not convinced that 1.1 hours for meeting with Mr. Crosbie, reviewing his analysis, and conducting additional research was excessive given the complexity of the issues and the number of claims and allegations at issue.

Beyond this one example, Mr. Shannin merely asserts in a conclusory manner that the number of hours expended is excessive given that the Heckenberg's voluntarily dismissed their claims. Such conclusory testimony is insufficient to meet Plaintiff's burden to establish that certain hours were excessive. *See Norman*, 836 F.2d at 1301 ("Generalized statements that the time spent was reasonable or unreasonable of course are not particularly helpful and not entitled to much weight.").

For their part, Plaintiffs emphasize the lack of substantive rulings in this case, arguing that the number of hours expended were clearly excessive since Plaintiffs' claims were voluntarily dismissed before resolving the issues on the merits. But Plaintiffs ignore the substantial number of hours required in this case just to respond to their copious allegations and numerous motions, including two motions for preliminary injunction and to certify a class. (Doc. 15, 128, 149, 176).

The large number of hours expended in the early stages of this litigation was also due, in significant part, to Plaintiffs' conduct, including Plaintiffs' failure to fully participate in reciprocal discovery (Docs. 136); their unwillingness to respond in a timely way to various motions (Doc. 171); and their injection of irrelevant issues into the litigation (Doc. 188). The DCS Defendants are entitled, under Florida law, to be reimbursed for the time required to respond to Plaintiffs' litigation tactics regardless of Plaintiffs' later decision to dismiss their claims. *See Thornber*, 568 So. 2d at 919.

Next, Plaintiffs argue that the methodology used by the DCS Defendants to apportion their fees between the various plaintiffs is inappropriate. In its previous order, the Court instructed the DCS Defendants to apportion their fees among the several plaintiffs such that each Plaintiff pays a proportionate share of the overall award and to account for the fact that some Plaintiffs dismissed their claims earlier than others and were, therefore, responsible for a smaller share of the fees. (Doc. 232). The DCS Defendants have since provided a revised assessment that divides their fees into different time periods based on when Plaintiffs dismissed their claims and then apportions those fees by Plaintiff. (Doc. 233-3).

Plaintiffs have not demonstrated that there are any actual flaws with this methodology. Instead, Plaintiffs merely point out that the DCS Defendants have already received attorney's fees from other Plaintiffs, including over $20,000 from the Won Y. Shin Trust and PJS Rentals, LLC.

But the purpose of apportioning fees between the Plaintiffs was to allow the DCS Defendants to collect their fair share from each Plaintiff. As the DCS Defendants explain in their reply, the payments from other former Plaintiffs represent that Plaintiff's fair share of the attorney's fees accrued by the DCS Defendants. (Doc. 257). Plaintiffs have not offered any actual evidence, or convincing argument, that permitting a recovery of attorney's fees from them would result in a windfall to the DCS Defendants.

Finally, Plaintiffs argue that the number of hours billed should be cut across the board because the DCS Defendants have failed to segregate their time spent working on claims for which attorney's fees are not authorized, mainly the federal claims, from the claims for which they are authorized. Plaintiffs maintain that the majority of the DCS Defendants' hours were spent on the federal RICO claim, and the DCS Defendants should be forced to deduct this time.

Plaintiffs are correct that when claims are based on distinct facts or legal theories, courts may treat work on the different claims as essentially distinct lawsuits and deduct from the final fee award time spent on unsuccessful claims. *See Hensley*, 461 U.S. at 434–35. But here the DCS Defendants succeeded on all their claims as Plaintiffs voluntarily dismissed every claim against them. (Doc. 178). Although the DCS Defendants are only entitled to their fees on some of the claims (notably only the state law claims), all of Plaintiffs' claims were related to the same set of operative facts, and the legal standards for the federal and state claims were largely similar, making it impractical (if not impossible) to distinguish between work done to secure dismissal of Plaintiffs' federal claims versus their state claims.[5]

---

[5] Mr. Crosbie, for his part, avers that due to the complicated nature of Plaintiffs' complaint, and the overlapping elements, all of the work performed by him and his firm was "inextricably linked." (Doc. 233 ¶9).

Most notably, Plaintiffs are entitled to their fees for defending against Plaintiffs' Florida RICO claims. Fla. Stat. § 772.104(3). Plaintiffs have not shown that the issues involved in litigating the Florida RICO claims were any different from the federal RICO claims such that hours expended on the federal RICO claim would be distinct from work on the state RICO claim. *See Arthur v. JP Morgan Chase Bank, N.A.*, 569 F. App'x 669, 679 (11th Cir. 2014) (stating that the Florida RICO Act is patterned after the federal RICO Act).

In addition, many of the hours expended by the DCS Defendants relate to Plaintiffs' complaint as a whole—for example, the DCS Defendants' motion to dismiss related to all Plaintiffs' claims, as well as the responses to Plaintiffs' motion for class certification and the various discovery related motions. (*E.g.* Docs. 43, 77, 83, 149). Plaintiffs have not shown that the hours expended could have been segregated into discrete claims, nor have they demonstrated that an across-the-board cut is warranted here. In fact, by asserting a wide variety of overlapping factual and legal claims into their complaint, Plaintiffs are themselves responsible for making it nearly impossible to segregate the legal and factual issues in this lawsuit.

In sum, the DCS Defendants have provided adequate documentation of their fees and properly apportioned them among the respective Plaintiffs. Plaintiffs have not met their burden to establish that the DCS Defendants' hours were unreasonable or excessive. The DCS Defendants, therefore, are entitled to the full amount of the fees they seek in their revised assessment. (Doc. 233-3).

**III.     RECOMMENDATION**

Accordingly, for the reasons state above, the DCS Defendants' revised assessment of its attorney's fees should be **GRANTED** (Doc. 233) and judgment entered in favor of the DCS Defendants and against Brad Heckenberg in the amount of **$26,910.39**, and against Lana Heckenberg in the amount of **$26, 910.39**.

**Recommended** in Ocala, Florida on August 23, 2018.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy